STATE of Iowa, Appellee,

v.

Terrance Dwayne WALKER, Appellant.

No. 96–1148.

Supreme Court of Iowa.

Jan. 21, 1998.

Rehearing Denied March 9, 1998.

As Corrected Feb. 16, 1998.

[redacted]

[redacted]

[redacted]

[redacted]

Anita M. Olson of the Olson Law Office, Altoona (until withdrawal), Alan Bernard, Bernard Law Firm, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald, Assistant Attorney General, Mary E. Richards, County Attorney, and Daniel J. Gonnerman, Assistant County Attorney, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

SNELL, Justice.

Defendant appeals from his convictions for perjury and tampering with records. We affirm.

I. Background Facts and Proceedings

On September 13, 1995, defendant Terrance Walker brought a district court subpoena to the student legal services office at Iowa State University to have the proof of service notarized. The subpoena was directed to twelve-year-old Chance Bearden, a student at an Ames elementary school. The subpoena directed Bearden to appear as a witness at Walker's trial on a simple misdemeanor charge of resisting arrest, scheduled for the following day.

The notary public at the legal services office, Dorinne De Krey, had known Walker for three or four years. De Krey testified that she notarized close to one hundred documents for Walker during that period of time. In De Krey's presence, Walker signed the proof of service on the back of the subpoena, indicating that he had already served Bearden. De Krey then typed the jurat and notarized the document. De Krey did not administer an oral oath to Walker before these procedures took place. Before Walker left the office, he indicated to De Krey that he had not actually served Bearden. An exchange took place between Walker and De Krey regarding the fact that the subpoena indicated Bearden had already been served. De Krey testified as to the content of that exchange as follows:

> And before he left the office, he said "well, now, I have to go out and serve him." I said "you mean you haven't? You just swore you had." He says "I'm going to do it right now. I'm going to do it right now." I said "if you don't, what are you going to do? Change the date on it"? "No. I'm going to do it right now." And he left the office.

On September 14, Walker appeared in Story County District Court for his simple misdemeanor trial. After the State rested, Walker, who appeared pro se, told Judge Steven Van Marel that he intended to call Bearden as a witness but that he was not in court, and requested a continuance so Bearden could be found and brought to court to testify. Walker showed the court the subpoena and the notarized proof of service. Judge Van Marel questioned Walker, who was not under oath at the time, about the service and whether he had personally served Bearden. Rather than answering directly, Walker stated, "Won't you believe the back of the subpoena?" Judge Van Marel questioned the accuracy of the subpoena and proof of service based on a phone call he had received from the principal of the elementary school Bearden attended. The principal told Judge Van Marel that Walker had given the subpoena to his girlfriend's daughter, Jawaher Messaad, to give to Bearden at school. Bearden showed the subpoena to his teacher and it eventually reached the principal's hands. Judge Van Marel advised the principal that Bearden would not be required to testify that afternoon. Based on this infor-

mation and his colloquy with Walker, Judge Van Marel did not grant Walker's requested continuance.

Subsequently, the State filed a trial information charging Walker with perjury in violation of Iowa Code section 720.2 (1995), tampering with records in violation of section 715A.5, and false representation of records or process, in violation of section 720.5. The charges revolved around Walker's actions and statements at the time of the notarization of the proof of service on the subpoena, not the statements made to Judge Van Marel regarding the accuracy of the subpoena at his simple misdemeanor trial.

The proof of service on the back of the subpoena for Chance Bearden reads as follows (the portion in brackets indicates information written by Walker; the rest of the language appears on the preprinted form except for the jurat, which was added by De Krey):

State of Iowa, For [Story] County, ss:

This subpoena came into my hands [September 13, 1995], and I certify that I personally served the same as follows:

On [Chance] (By reading the same to him in this county and delivering him a copy.) [September 13, 1995]

By /s/ Terrance Walker

Terrance Walker

SUBSCRIBED AND SWORN to before me by Terrance Walker this 13th day of Sept. 1995.

/s/ Dorinne H. De Krey

NOTARY PUBLIC IN AND FOR

THE STATE OF IOWA

Comm. Expires 10/31/97

At trial, De Krey testified that Walker frequently asked her to notarize documents and although she did not place him under oath on September 13, she believed he knew he was signing the proof of service under oath. De Krey testified that she never asked clients to raise their hand and repeat an oath. She testified that at least on the first occasion she notarized a document for someone, she would say "you know that you're saying that this is true." However, if she had notarized documents for someone many times, she would not repeat the statement about truthfulness. She assumed that regular clients realized they were acting under oath. De Krey testified that during prior encounters with Walker, she had repeated the admonition regarding truthfulness. On September 13, however, De Krey did not repeat this admonition and did not question Walker as to whether he knew he was under oath. Judge Van Marel testified that if service of the subpoena was proper he would have granted Walker's request for a continuance to allow Bearden to testify. In his defense, Walker testified he never swore under oath that he personally served Chance Bearden, and any mistake in the proof of service was unintentional.

Prior to submission of the charges to the jury, the court sustained Walker's motion for judgment of acquittal on the false representation of records charge. The court denied similar motions with regard to the remaining charges. The jury found Walker guilty of perjury and tampering with records. Walker made a motion for a new trial, which was denied. The court sentenced him to five-year and two-year terms of imprisonment, suspended the terms, and placed him on probation with various conditions.

## II. Issues on Appeal

On appeal, Walker argues he was not under oath for purposes of the perjury statute when he signed the proof of service portion of the subpoena. He also asserts that his signature on the subpoena does not constitute "a statement of material fact" as required to prove perjury. He also raises a retraction defense to the perjury charge. Finally, he argues there was insufficient evidence presented at trial to sustain the tampering charge, because he did not have the intent to deceive or injure anyone, or to conceal any wrongdoing.

## III. Perjury Charge

Iowa Code section 720.2 provides in pertinent part:

A person who, while under oath or affirmation in any proceeding or other matter in which statements under oath or affirmation are required or authorized by law,

knowingly makes a false statement of material facts or who falsely denies knowledge of material facts, commits a class "D" felony.

The State alleges Walker committed perjury when he signed the proof of service at the legal services office. We have previously stated that the essential elements of perjury are "(1) a false statement of fact, opinion or belief knowingly made regarding any material matter, (2) under a lawfully authorized oath or affirmation, (3) in any proceeding before any court of justice or officer thereof, or, before any tribunal or officer created by law, or in any proceeding in regard to any matter or thing in or respecting which an oath or affirmation is required or authorized by law." *State v. Deets*, 195 N.W.2d 118, 122 (Iowa 1972). The first two elements are relevant to this appeal and will be addressed in order.

A. Materiality

1. Scope of Review

Walker preserved error on the issue of the sufficiency of the evidence with regard to the elements of perjury by making a timely motion for judgment of acquittal at the close of all the evidence and via his motion for new trial.

We have previously stated that "[u]nquestionably the materiality of false testimony is, in this jurisdiction, a law issue determinable by the court." *Deets*, 195 N.W.2d at 122. This proposition was in accord with the majority view at the time. *See* John E. Theuman, Annotation, *Materiality of Testimony Forming Basis of Perjury Charge as Question for Court or Jury in State Trial*, 37 A.L.R.4th 948, 951 (1985).

However, a recent United States Supreme Court case prompts us to question that longstanding rule. In *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), the Court concluded that the Constitution requires the question of materiality to be submitted to the jury. The Court based its reasoning on the rights provided by the Fifth and Sixth Amendments to the United States Constitution. The Court noted it previously held that those provisions "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Gaudin*, 515 U.S. at 510, 115 S.Ct. at 2313, 132 L.Ed.2d at 444 (citing *Sullivan v. Louisiana*, 508 U.S. 275, 277–78, 113 S.Ct. 2078, 2080–81, 124 L.Ed.2d 182, 188 (1993)). The Court found that under the statute in question, a federal law prohibiting false statements on federal loan documents, materiality was an element of the crime and thus the defendant was entitled to have a jury make the determination of materiality. *Id.* at 523, 115 S.Ct. at 2320, 132 L.Ed.2d at 458. The Court noted its specific rejection of prior cases that had embraced the proposition that the element of materiality in perjury prosecutions is to be decided by the judge. *Id.* at 519, 115 S.Ct. at 2318, 132 L.Ed.2d at 456–57.

■ Based on the Court's decision in *Gaudin*, we feel compelled to conclude that the element of materiality should be submitted for the jury's determination in order to preserve the defendant's rights under the Fifth and Sixth Amendments. Clearly, under our perjury statute and our interpretations of that statute, materiality is an element of the crime of perjury. *See* Iowa Code § 720.2; *Deets*, 195 N.W.2d at 122. Thus, we overrule our holding in *Deets* and prior cases that materiality is an element for the judge to determine as a matter of law. In reaching this conclusion, we follow several other state courts which have recently rendered similar decisions based on the Supreme Court's decision in *Gaudin*. *See, e.g., People v. Kobrin*, 11 Cal.4th 416, 45 Cal.Rptr.2d 895, 903 P.2d 1027, 1033–34 (1995); *People v. Vance*, 933 P.2d 576, 578 (Colo.1997); *State v. Rollins*, 24 Kan.App.2d 15, 941 P.2d 411, 420–21 (1997); *State v. Pechan*, 554 N.W.2d 663, 664–65 (S.D.1996).

Despite our holding in *Deets* and the comments to Iowa's uniform jury instructions, *see* Iowa Crim. Jury Instructions 2000.1, .4 (1988), the district court submitted the issue of materiality to the jury. Therefore, the district court did not err and we review the jury's finding for substantial evidence.

■ The scope of our appellate review from the denial of a motion for judgment of

acquittal based on insufficient evidence is well established:

> Our review of a substantial evidence claim is on error. We are bound by the jury verdict unless the verdict is not supported by substantial evidence. In making this determination, we must consider all the evidence in the light most favorable to the State. We accept all legitimate inferences that may fairly and reasonably be deducted from the evidence. Evidence is substantial if it could convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. Direct and circumstantial evidence are equally probative. Evidence, whether direct or circumstantial, must however do more than create speculation, suspicion or conjecture.

*State v. Bayles,* 551 N.W.2d 600, 608 (Iowa 1996) (citations omitted); *see also State v. Sanborn,* 564 N.W.2d 813, 816 (Iowa 1997).

### 2. Discussion

■ Walker alleges that his statements were not material, one of the elements necessary to properly convict a defendant of perjury. As to the proof needed to satisfy this element of perjury, we said in *Deets:*

> A false statement of fact knowingly made under oath or affirmation is material and will support a charge of perjury if it directly or circumstantially (1) supports or attacks the credibility of a witness, or (2) has a legitimate tendency to prove or disprove some relevant fact irrespective of the main fact at issue, or (3) is capable of influencing the court, officer, tribunal or other body created by law on any proper matter of inquiry.

*Deets,* 195 N.W.2d at 122.

Walker's false statement of fact was that he had personally served Chance (Bearden) on September 13, 1995. The wording of the proof of service indicates that service had already been completed. ("I certify that I personally *served* ...") (emphasis added). This statement was material because it was capable of influencing the court. Walker presented the subpoena to Judge Van Marel in an attempt to persuade the court that Bearden had been served and thus, that a continuance should be granted. As noted by Judge Van Marel in his testimony at trial:

> If the subpoena had properly been served on Mr. Bearden, ... I would have continued the trial to allow Mr. Walker to have his witness there to testify. On the other hand, if there had been improper service and Mr. Bearden didn't show up to Court, then I was not going to continue the trial.

Under cross-examination by Walker, Judge Van Marel explained: "If the only information I had had was the subpoena, and you had told me you had personally served the subpoena, then I would have sent the police officer out to find Mr. Bearden." These statements indicate that Walker's assertions in the proof of service had the potential to influence the court in its decision whether to grant the continuance requested by Walker.

Walker attacks the jury's assessment of materiality, arguing that because most of the proof of service constitutes a preprinted form only his signature could constitute a statement for materiality purposes and "his signature is not material." This argument misses the point. The false statement on which the perjury charge is based is not the signature per se, but the assertion that Walker had already served the subpoena, to which his signature attests.

We conclude the jury's finding of materiality is supported by substantial evidence.

### B. Oath Requirement

### 1. Scope of Review

As stated above, Walker properly preserved error on this issue by making a motion for judgment of acquittal. Our scope of review is for substantial evidence. *See Bayles,* 551 N.W.2d at 608.

### 2. Discussion

■ We must determine whether there is substantial evidence to support the jury's finding that Walker was under oath at the time he signed his name to the proof of service on the back of the subpoena. We begin with an examination of the requirements for the issuance of a subpoena, the document from which the charge of perjury

arose. With regard to this matter, Iowa Code section 622.63 states:

> The clerks of the several courts shall, on application of any person having a cause or matter pending in court, issue a subpoena for witnesses under the seal of the court, . . . which may be served by the sheriff of the county, or by the party or any other person.

When someone other than the sheriff serves a subpoena, Iowa Code section 622.64 requires that proof of such service must be shown by affidavit. Therefore, Walker was required to prove proof of service of the subpoena by affidavit. Iowa Code section 622.85 sets forth the requirements of affidavits.

> An affidavit is a written declaration made under oath, without notice to the adverse party, before any person authorized to administer oaths within or without the state.

Notaries public are empowered to administer oaths and take affirmations. Iowa Code § 63A.1(4).

The Iowa Code does not set forth the form required for a valid oath. However, section 9E.9, entitled "notarial acts," sets forth requirements for various notarial acts. Subsection 9E.9(2) provides:

> In taking a verification upon oath or affirmation, the notarial officer must determine, either from personal knowledge or from satisfactory evidence, that the person appearing before the officer and making the verification is the person whose true signature is on the statement verified.

This subsection is a fairly new addition to our law on notaries public, enacted in 1989. *See* 1989 Iowa Acts ch. 50, § 9(2). Prior to that time, our Code did not contain specific requirements for notarial acts. A "verification upon oath or affirmation" is defined as "a declaration that a statement is true, made by a person upon oath or affirmation." Iowa Code § 9E.2(5). Nowhere in chapter 9E is there a requirement that an oral oath be administered to an affiant in order for an affiant to properly verify a document under oath or affirmation.

In cases prior to the enactment of section 9E.9, we have discussed what is necessary to prove a valid oath. In *State v. Hulsman,* 147 Iowa 572, 126 N.W. 700 (1910), we stated:

> [t]he purpose of an oath is to secure the truth, and hence any form thereof which is ordinarily calculated to appeal to the conscience of the person to whom it is administered, and by which he signifies that his conscience is bound, is sufficient.

*Hulsman,* 147 Iowa at 573, 126 N.W. at 701. In *Dalbey Brothers Lumber Co. v. Crispin,* 234 Iowa 151, 12 N.W.2d 277 (1943), we quoted with approval the following statement:

> If the attention of the person making the affidavit is called to the fact that it must be sworn to and, in recognition of this, he is asked to do some corporal act and he does it, the instrument constitutes a statement under oath, irrespective of any other formalities.

*Dalbey,* 234 Iowa at 155–56, 12 N.W.2d at 279 (quoting 1 Am.Jur. *Affidavits* § 13, at 942).

Most of our prior opinions dealing with administration of oaths and whether a statement has been properly "sworn to" involve cases in which the jurat on the affidavit or statement is blank. In other words, the notary or other person authorized to administer oaths did not sign the document or provide his seal signifying that the act was done in his presence. *See, e.g., In re Estate of Entler,* 398 N.W.2d 848, 850 (Iowa 1987) (finding that where jurat is blank independent proof of the administration of an oath is ordinarily necessary); *State v. Phippen,* 244 N.W.2d 574, 576 (Iowa 1976) (concluding that where jurat was not completed and record was barren of other proof of administration of oath, complainant was not shown to be under oath and complaint was therefore deficient); *Miller v. Palo Alto Bd. of Supervisors,* 248 Iowa 1132, 1136–37, 84 N.W.2d 38, 40–41 (1957) (finding that where jurat was blank and sheriff who witnessed signing of document did not understand he was administering an oath, the evidence was insufficient to prove an oath was administered); *In re Estate of Hoyt,* 246 Iowa 292, 298, 67 N.W.2d 528, 532 (1954) (holding that in absence of jurat or

signature of someone empowered to administer oaths and no other evidence that an oath was administered, "[t]he paper amounted to no more than an unverified statement"); *Farmers State Sav. Bank v. J.B.H. Enters.*, 561 N.W.2d 836, 838 (Iowa App.1997) (holding that document did not constitute a legally sufficient affidavit in absence of completed jurat and failure of party to provide independent proof of administration of oath).

In the case at bar, the jurat is complete, which would ordinarily suffice to prove an oath had been administered. However, there is contrary evidence from the testimony of the notary that no oral oath was in fact administered. It has been noted that a jurat is not conclusive evidence of administration of an oath. It may be attacked and shown to be false. 67 C.J.S. *Oaths & Affirmations* § 7 (1978).

In *Dalbey*, we considered a slightly different scenario from that in the cases listed above. *Dalbey* involved the sufficiency of a mechanic's lien in light of a statute which required a verified statement for the lien to be valid. The lien contained a typical jurat, which was blank, as well as an acknowledgment clause which the notary signed and to which his seal was affixed. *Dalbey*, 234 Iowa at 154–55, 12 N.W.2d at 279. The acknowledgment clause stated:

> On this Tenth day of April, A.D.1941, before me, Ione Hedlund, a Notary Public in and for Polk County, Iowa, personally appeared Robert T. Dalbey, to me known to be the person named in and who executed the foregoing instrument and acknowledged that he executed the same as his voluntary act and deed.
>
> Ione Hedlund,
> [Seal]     Notary Public in and for Polk County, Iowa.

*Id.* We were asked to determine whether the lien was verified as required by statute to validate the lien. We concluded that despite the fact that the jurat was incomplete, the lien was properly verified. We noted that the person who signed the lien was "conscious of the fact that he was swearing to the correctness of the lien . . . and that the lien should not be held invalid" because of the incomplete jurat. *Id.* at 155, 12 N.W.2d at 279.

In *Dalbey* we cited with approval *Atwood v. State*, 146 Miss. 662, 111 So. 865 (1927), in which the court considered whether an affidavit for a search warrant was valid. The affidavit had been signed in the presence of a justice of the peace, but the justice did not require the affiant to hold up his hand to be sworn nor was there any formal oral administration of an oath. *Atwood*, 111 So. at 865. The court noted that both the justice of the peace and the affiant realized an oath was necessary before the warrant could be issued properly and they both understood · even without an affirmative oath that the affiant was making the necessary affidavit to obtain the warrant. The court concluded, "One may speak as plainly and effectually by his acts and conduct as he can by word of mouth." *Id.* at 866.

We conclude that there was substantial evidence presented for the jury to find that Walker was under oath at the time he signed the proof of service. From the facts presented, the jury could have found that Walker's conscience was bound by the events which took place in the legal services office. Despite the fact that De Krey did not formally administer an oral oath to Walker by requiring him to raise his hand and orally aver that he promised to state the truth, his actions that day, combined with the form of the proof of service and his prior experience with notarization of legal documents are sufficient to support the jury's finding that Walker was under oath.

Walker affirmatively sought notarization of the proof of service, which is indicative of his intent that it be legally validated and capable of lending judicial authority to his request for Bearden to testify. His actions in court the following day are also indicative of his desire that the court view the subpoena as valid. In addition, Walker filled in the proof of service form and signed his name to the document in the presence of De Krey. The preprinted language states, "I *certify* that I personally served [the subpoena] as follows." (Emphasis added.) This language, which Walker read and to which he subscribed his signature, suggests that the information to follow

was truthful and accurate. This interpretation of the significance of the language on the proof of service is supported by our previous interpretation of the word "certify" as well as standard definitions of the word. Black's Law Dictionary provides the following definition of certify: "To authenticate or vouch for a thing in writing, To attest as being true or as represented." Black's Law Dictionary 228 (6th ed.1990). In *State v. Boner*, 186 N.W.2d 161 (Iowa 1971), we stated that "to certify" means "to testify to a thing in writing." *Boner*, 186 N.W.2d at 164 (quoting *State ex rel. Scotten v. Brill*, 58 Minn. 152, 59 N.W. 989, 990 (1894)). The proof of service that Walker signed stated that he·certified he had served Bearden on September 13. In keeping with standard definitions of the word certify and our prior interpretation of that word, the language of the proof of service which Walker signed indicates that he testified in writing he had already served Bearden. Furthermore, Walker was very familiar with the notarization process and the effect of having documents notarized. De Krey testified that she had notarized nearly one hundred documents for Walker and that in the past she had informed Walker of the legal significance of having a document notarized.

The setting in which Walker made the false statement comports with that required by our court in *Dalbey*. Through the language at the top of the proof of service, Walker's attention was called to the fact that he was certifying the information he provided below, specifically, that he had personally served Chance (Bearden) on September 13. His signature at the bottom of the proof of service constituted a corporal act recognizing the import of the information provided in the document. *Dalbey*, 234 Iowa at 155–56, 12 N.W.2d at 279 (citing 1 Am.Jur. *Affidavits* § 13, at 942) (setting forth requirements of valid oath). The proof of service was signed in front of De Krey, a notary public authorized to administer oaths and attest to the acts of the affiant. In addition, De Krey added the jurat, signifying that she felt Walker realized he was making the statement under oath. This provides further support for the jury's conclusion that Walker

was under oath at the time he completed and signed the proof of service.

The requirements of Iowa Code section 9E.9(2) and our prior case law also support the jury's finding. Our law does not appear to require the formal administration of an oral oath.

Our findings regarding what is necessary to constitute a valid oath are also supported by several jurisdictions which have considered the same issue. *See, e.g., Anchorage Sand & Gravel Co. v. Wooldridge*, 619 P.2d 1014, 1016 (Alaska 1980) (finding that "when a lien claimant in the presence of a notary, affixes his signature to a written statement ..., and the notary certifies this act, claimant has substantially complied with the requirement of an 'oath' "); *State v. Anderson*, 178 Kan. 322, 285 P.2d 1073, 1077–78 (1955) (finding, even in light of statute prescribing specific form of oath, that defendant was under oath when he signed complaint in presence of judge, who signed the same in silence; noting that statutory oath requirements are not always complied with strictly and that "some weight must be given to opening statements of the complaint and to the physical acts of the parties even though statutory formalities were not observed"); *State v. Snyder*, 304 So.2d 334, 335–36 (La. 1974) (concluding allegations that defendant signed answers to interrogatories and affidavit attesting to their truthfulness in the presence of a notary public, and that notary dated and signed jurat in presence of defendant were·sufficient to sustain indictment for perjury and noting that oath requirement is met if "both the person swearing and the officer administering the oath understand that what is done is proper for the administration of the oath and all that is necessary to complete the act of swearing"); *Moore v. Peterson*, 218 Neb. 615, 358 N.W.2d 193, 194 (1984) (noting that oath ·to an affiant need not "be administered with any particular ceremony, but the affiant must perform some corporal act whereby he consciously takes upon himself the obligation of an oath" and finding in this case that signature of affiant was a corporal act sufficient to meet the oath requirement); *Blackburn v. .Motor Vehicles Div.*, 33 Or.App. 397, 576 P.2d 1267, 1269–70

(1978) (joining jurisdictions which hold that merely signing form of affidavit in the presence of a notary is sufficient to satisfy oath requirement); *Mickelsen v. Craigco, Inc.,* 767 P.2d 561, 564 (Utah 1989) (finding that notice of mechanic's lien was properly verified where affiant merely signed affidavit in presence of notary; concluding that for valid verification, "(1) there must. be a correct written óath or affirmation, and (2) it must be signed by the affiant in the presence of a notary or other persòn authorized to take oaths, and (3) the latter must affix a proper jurat"); *State v. Lewis,* 85 Wash.2d 769, 539 P.2d 677, 678–79 (1975) (en banc) (affirming previous decisions holding that mere signing of affidavit in the presence of a notary is sufficient to constitute taking of an oath).

In reaching our conclusion, we find a statement of the California Court of Appeals particularly apt and supportive of our determination of the requirements for a valid oath.

The busy business world of today inevitably spawns informality in the performance of ceremonial functions, particularly those which are (at least in some respects) the vestiges of a more ritualistic era. We look, modernly, to substance more than form. In the field of law into which this case falls the manifested intent with which an act is done should weigh more heavily than the observance of punctiliousness in its ceremonial aspects. Symbolism should not be confused with solemnization.

*People v. Walker,* 247 Cal.App.2d 554, 55 Cal.Rptr. 726, 732 (1967). The court concluded that the defendant was under oath for purposes of the perjury statute, noting that the defendant was well aware the instrument would be regarded as a sworn statement and that the defendant approached the notary to have the form notarized. *Id.*

Based on the evidence presented and our examination of our case law and statutes, as well as cases from other jurisdictions, we find substantial evidence existed for the jury to conclude that Walker committed perjury.

C. Retraction Defense

▉ In his reply brief, Walker argues that he retracted his false statements via the verbal exchange with De Krey prior to leaving the legal services office, during which he admitted he had not yet served Bearden. Our perjury statute provides for retraction as a defense. It states as follows:

No person shall be guilty of perjury if the person retracts the false statement in the course of the proceedings where it was made before the false statement has substantially affected the proceeding.

Iowa Code § 720.2.

We need not decide whether Walker retracted his false statement. Walker first raised this defense in his reply brief. We have long held that an issue cannot properly be asserted for the first time in a reply brief. *See Young v. Gregg,* 480 N.W.2d 75, 78 (Iowa 1992); Iowa R.App. P. 14(f)(3). Thus, Walker's argument comes too late for our consideration.

IV. Tampering with Records Charge

A. Scope of Review

Error was preserved by Walker's motion for judgment of acquittal at the close of evidence. In our review, we must determine whether the jury's verdict was based on substantial evidence as stated in Part III.A.1. *Bayles,* 551 N.W.2d at 608.

B. Discussion

Iowa Code section 715A.5 defines the offense of tampering with records:

A person commits an aggravated misdemeanor if, knowing that the person has no privilege to do so, the person falsifies, destroys, removes, or conceals a writing or record, with the intent to deceive or injure anyone or to conceal any wrongdoing.

Walker was charged with knowingly falsifying the proof of service on the subpoena. He claims the evidence presented at trial is insufficient to prove the elements of this crime beyond a reasonable doubt. Specifically, Walker argues that the State did not present sufficient evidence to show that he had the "intent to deceive or injure anyone or to conceal any wrongdoing." He argues that any deceit or injury resulting from the false statement on the proof of service was unintentional and that, therefore, he lacked

the requisite mental state to commit the offense. He contends that he planned to personally serve Bearden after leaving the legal services office; however, he was unable to find Bearden and thus resorted to sending the subpoena to school with his girlfriend's daughter for her to deliver. He also argues that the meaning of the word "falsify" does not include making an untrue statement, but is limited to actions such as changing, altering, mutilating or tampering with a writing or record.

### 1. Intent to Deceive

Section 715A.5 requires a showing of intent to deceive or injure or to conceal a wrongdoing. Walker argues that because he planned to serve Bearden immediately after obtaining the notarization, there was no intent to deceive or injure. We note that specific intent may be shown by circumstantial evidence and the reasonable inferences drawn from that evidence. *State v. Nance*, 533 N.W.2d 557, 562 (Iowa 1995). Specific intent is seldom capable of direct proof. *State v. Rademacher*, 433 N.W.2d 754, 758 (Iowa 1988).

The fact that Walker admittedly provided false information on the proof of service is evidence of his intent to deceive. Had he not attested to the language in the proof of service that he had already served Bearden, De Krey likely would not have notarized the document. Iowa law requires that a subpoena served by someone other than a sheriff be notarized. The jury could have inferred Walker's intent to deceive based on his need to have the document notarized before his trial the following day. This inference is supported by evidence regarding Walker's experience with legal matters. De Krey testified that Walker knew the legal significance of having a document notarized; she had personally notarized close to one hundred documents for him. Walker's intent to deceive De Krey can also be inferred from his failure to rectify the situation when the conversation regarding service took place after De Krey had notarized the document. Walker's statements and actions also show his intent to deceive the court by submitting a subpoena with false information. Evidence

of this intent is bolstered by testimony regarding Walker's colloquy with Judge Van Marel during the misdemeanor trial. When questioned about whether Bearden had been served with a subpoena, Walker presented the falsified return of service to the court in an attempt to mislead it into believing he had personally served Bearden. His actions and statements at that time evince an intent to attempt to deceive the court. Although Walker claims he did not intend to deceive anyone, we conclude that the only unintended result of his actions was his bad fortune of getting caught.

### 2. Acts Constituting "Falsification"

The legislature did not define the term "falsifies." Therefore, we assume the legislature intended the word to have its common and ordinary meaning. *State v. Bush*, 518 N.W.2d 778, 780 (Iowa 1994). In *State v. Romeo*, 542 N.W.2d 543, 548 (Iowa 1996), our only prior case interpreting section 715A.5, we looked to dictionary definitions to determine the meaning of the word. A standard dictionary defines "falsify" as: "to prove to be false; to prove false so as legally to avoid, defeat, or rectify; to make false by mutilation or addition: tamper with; counterfeit, forge, adulterate." Webster's Third New International Dictionary 820 (unabr. ed.1993). Black's Law Dictionary provides a similar definition: "To counterfeit or forge; to make something false; to give a false appearance to anything . . .; to tamper with, as to falsify a record or document." Black's Law Dictionary 603 (6th ed.1990).

We have previously noted that Walker's statement on the proof of service that he had already personally served Bearden was false. This was shown by the testimony of De Krey, who testified that Walker admitted before he left the office that he had not yet served Bearden, and by Bearden, who testified he did not receive the document until September 14, the day after the date of service found on the proof of service signed by Walker. Furthermore, Bearden's testimony showed that Walker himself did not serve the subpoena, as alleged in the proof of service. These falsities made the proof of service a false document. Walker's actions in render-

ing the proof of service a false document satisfy the ordinary and legal definitions of "falsify."

In light of the evidence and testimony presented, we conclude there was substantial evidence available for the jury to find that Walker's actions fell within the realm of conduct prohibited by section 715A.5.

### V. Conclusion

In summary, we find there was substantial evidence for the jury to conclude that Walker was guilty of both the perjury and tampering with records charges. Therefore, we conclude the trial court did not err in denying Walker's motions for judgment of acquittal and new trial.

**AFFIRMED.**