**CITY OF CEDAR RAPIDS, Iowa, Appellee,**

v.

**Edward G. ATSINGER III, Appellant.**

**No. 98–1066.**

Supreme Court of Iowa.

Sept. 7, 2000.

Rehearing Denied Oct. 10, 2000.

Kevin P. Shea of Shea Law Offices, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Bruce Kempkes, Assistant Attorney General, for appellee.

CARTER, Justice.

Edward G. Atsinger III, a motorist convicted of driving at an excessive speed in violation of an ordinance of the City of Cedar Rapids, challenges the uniform citation and complaint on which the charge was brought. He urges that the complaint was not an "information under oath," as required by article I, section 11 of the Iowa Constitution. For reasons discussed in this opinion, we agree with Atsinger's contention and reverse the conviction entered in the district court.

On October 19, 1997, Atsinger's vehicle was pulled over by police on Interstate 380 in the city limits of Cedar Rapids. He was given a citation charging him with driving seventy-four miles per hour in an area where the maximum speed limit was sixty miles per hour in violation of Ordinance No. 61.029 of the City of Cedar Rapids. The offense charged was a simple misdemeanor. On the uniform citation and complaint that the officers issued, two names and officer identification numbers were printed beneath a certification that recited: "I certify under penalty of perjury and pursuant to the laws of the State of Iowa that the preceding is true and correct."

The procedure provided in the Iowa Rules of Criminal Procedure for the charging of a simple misdemeanor is:

Prosecutions for simple misdemeanors must be commenced by filing a subscribed and sworn to complaint with a magistrate or district court clerk or the clerk's deputy.

Iowa R.Crim. P. 35. In the case of traffic citations, the commissioner of public safety, the director of transportation, and the director of natural resources, acting jointly, are authorized by law to adopt a uniform document serving as both a citation and complaint. Iowa Code § 805.6 (1997). One of the copies of the citation retained by the officer becomes the complaint when filed, as provided in Iowa Rule of Criminal Procedure 35.

Subsection 4 of section 805.6 provides:

The uniform citation and complaint shall contain a place for the verification of the officer issuing the complaint. The complaint may be verified in accordance with section 622.1.

Iowa Code section 622.1, which was enacted in 1984, provides:

When the laws of this state or any lawful requirement made under them requires or permits a matter to be supported by a sworn statement written by the person attesting the matter, the person may attest the matter by an unsworn written statement if that statement recites that the person certifies the matter to be true under penalty of perjury under the laws of this state, states the date of the statement's execution and is subscribed by that person. This section does not apply to acknowledgements where execution is required by law, to a document which is to be recorded under chapter 558 or to a self-proved will under section 633.279, subsection 2.

Before section 805.6 was amended in 1995 (1995 Iowa Acts ch. 81, § 1(a)), subsection 4 of that section had provided:

The uniform citation and complaint shall contain a place for the verification of the officer issuing the complaint. The complaint may be verified before the

chief officer of the law enforcement agency, or the chief officer's designee, and the chief officer of each law enforcement agency of the state is authorized to designate specific individuals to administer oaths and certify verifications.

■ Atsinger contends that verification of the uniform citation and complaint by the procedure prescribed in Iowa Code section 622.1 in lieu of the former requirement that the information to be given under oath in the presence of someone empowered by law to administer oaths is in violation of article I, section 11 of the Iowa Constitution. That constitutional provision states:

All offenses less than felony and in which the punishment does not exceed a fine of one hundred dollars, or imprisonment for thirty days, shall be tried summarily before a justice of the peace or other officer authorized by law, *on information under oath*, without indictment, or the intervention of a grand jury, saving to the defendant the right of appeal.

Iowa Const. art. I, § 11 (emphasis added).

Atsinger contends that in order to have an information under oath the declarant must appear and take an oath before a public official empowered to administer an oath. He relies on two prior decisions of this court as supporting this contention.

The first case relied on by Atsinger is *State v. Phippen*, 244 N.W.2d 574 (Iowa 1976). Like the present case, *Phippen* was a challenge to a uniform citation and complaint on the basis that it was not made under oath. The issues involved both statutory interpretation and the application of article I, section 11 of our state constitution. The citation and complaint in *Phippen* was subscribed to by the officer at a time when the statutory law required a uniform citation and complaint to contain an oath to be administered by one empowered by statute to administer oaths. The uniform citation and complaint at issue contained a jurat, which recited:

subscribed and sworn to before me on _____ 19___ A.D.

---

(Signature of Official
Administering Oath)

The uniform citation and complaint on which Phippen was tried contained a jurat that at all times remained completely blank. He challenged this deficiency in the district court where a judgment of conviction resulted. On appeal this court held:

We hold that the complaint was not shown to be under oath or affirmation and was deficient under § 11 of our Bill of Rights [article I, § 11 of the Iowa Constitution] and § 753.13 of the Code.

*Phippen*, 244 N.W.2d at 576.

The *Phippen* case is significant for two reasons. First, it is a square holding that, if a uniform citation and complaint does not comply with the constitutional oath requirement of article I, section 11, the charge must be dismissed. Second, in discussing the necessary formalities of a valid oath, the *Phippen* case refers to and considers as instructive the decision of this court in *Dalbey Bros. Lumber Co. v. Crispin*, 234 Iowa 151, 12 N.W.2d 277 (1943). *Dalbey* is the other case on which Atsinger relies. In referring to the *Dalbey* case, this court stated in *Phippen*:

This court considered the necessary formalities for an "oath" in *Dalbey Bros. Lumber Co. v. Crispin*. Our statutes list the officers who may administer oaths and take affirmations in § 78.1 of the Code. See also §§ 78.2 and 753.13. Under the *Dalbey* decision, undoubtedly either an "oath" or "affirmation" would suffice, and the present form [of jurat], if completed, would be sufficient; undoubtedly the oath or affirmation could be administered or taken by any of the officials listed in § 78.1, or in §§ 78.2 or 753.13 where applicable; and undoubtedly an oath or affirmation, if actually administered or taken, could be proved by a completed jurat of the official or, if

the jurat was not completed, by evidence aliunde.

*Phippen*, 244 N.W.2d at 575–76 (citations omitted).

At issue in the *Dalbey* case was whether a mechanic's lien had contained "a verified statement of account." [1] The challenge raised in the *Dalbey* case was that the notary had used an acknowledgement form rather than a jurat. The acknowledgement only stated that the declarant had "executed the same as his voluntary act and deed." In discussing the formalities of an oath in *Dalbey*, this court referred to a discussion in 39 Am.Jur. *Oath & Affirmation* § 13, which stated:

> [T]o make a valid oath, there must be in some form, in the presence of an officer authorized to administer it, an unequivocal and present act by which the affiant consciously takes upon himself the obligation of an oath.

*Dalbey*, 234 Iowa at 156, 12 N.W.2d at 279. Relying on proof *aliunde* that the declarant had sought out an officer authorized to administer an oath for the purpose of giving a sworn account, the court found that the mechanic's lien was sufficiently verified. *Id.* at 157, 12 N.W.2d at 280.

The city counters Atsinger's reliance on the *Phippen* and *Dalbey* cases by suggesting that this court in a more recent case has approved a more flexible approach in the determination of what constitutes an oath. It bases that assertion on *State v. Walker*, 574 N.W.2d 280 (Iowa 1998), in which the issue was whether making a false return of service on a subpoena was punishable as perjury. In *Walker* the defendant had appeared before a notary, placed his signature on the verification of service, and the notary had completed a jurat reciting "subscribed and sworn to before me." There was evidence presented that the defendant had appeared before the same notary on other occasions to have his process serving verified. Evidence was presented that on some of these occa-

sions the notary had advised the defendant that he was certifying that his statements on the return of service were true. Apparently, that admonition was not given in the situation that led to the perjury charge. Although Walker testified that he did not raise his hand and recite an oath and the notary had not recited an oath to him, we held that there was sufficient evidence for the trier of fact to find that the defendant's statement on the return of service was made under oath. *Walker*, 574 N.W.2d at 286.

Because the acts of perjury relied on by the state in *Walker* did occur before a public officer empowered to administer an oath and that officer executed a jurat asserting that the statement had been sworn to, the case is of little assistance in deciding the present controversy. The language in *Walker* on which the city relies to show a relaxation of the formal requirements for an oath had to do with the formalities of having the affiant raise his hand and the notary orally administer an oath. We held that it was sufficient to certify to the facts in writing. *Id.* at 287. In so deciding, *Walker* was only being consistent with earlier decisions of this court holding that the formality of an oral recitation of the oath is not necessary. *E.g.*, *State v. Boner*, 186 N.W.2d 161, 164 (Iowa 1971). The significant aspect of an oath, which was found to be crucial in *Walker*, was whether the affiant's "conscience was bound" by the events that took place at the time the oath was administered. *Walker*, 574 N.W.2d at 286.

Support for Atsinger's contention that the procedure in the present case violated article I, section 11 of the Iowa Constitution was found in a 1987 opinion of the Iowa Attorney General. That opinion responded to a request concerning whether the procedure established in section 622.1 could be utilized in the verification of a uniform citation and complaint under the

---

1. Both the *Phippen* case and the *Dalbey* case equate verification with a statement under oath. *Phippen*, 244 N.W.2d at 575; *Dalbey*, 234 Iowa at 157, 12 N.W.2d at 279.

version of section 805.6(4) that existed prior to 1995. The opinion expressed the view that it could not. Although it was primarily based on statutory interpretation, the opinion expressed the view that to do so would be a violation of article I, section 11 of the Iowa Constitution. 1987 Op. Iowa Att'y Gen. 52.

■ We are persuaded that on balance the arguments on the issue strongly favor Atsinger's position. Both the *Phippen* and *Dalbey* decisions concluded that a statement under oath involved an appearance before an officer empowered to administer oaths. So does the opinion of the attorney general to which we have referred. We are convinced that the factor of binding one's conscience, which was highlighted in *Walker*, is not to be accomplished alone in the oath-taking process. Some person must be present to assure that this occurs.[2] Perhaps the strongest evidence that this is what the constitution requires is that appearance before a designated officer was accepted as being a requirement for an oath for more than 125 years between the adoption of the constitutional provision at issue in 1857 and the enactment of section 622.1 in 1984. We are persuaded that this requirement should remain.

The city's arguments, in order to succeed, require a conclusion that the penalty of perjury is the equivalent of a verification under oath. We are convinced that it is not. When the law was changed to provide an alternative form of verification in lieu of an oath, the legislature observed the distinction by referring to the alternative as attestation by "an unsworn written statement." 1984 Iowa Acts ch. 1048, § 1.

The conclusion that if a false assertion is made punishable as perjury then that assertion has been made under oath is based entirely on circular reasoning to wit:

> Q. When is a statement made under oath? A. When it is punishable as perjury if false.
>
> Q. When is a false statement punishable as perjury? A. When it has been made under oath.

Notwithstanding the fact that perjury may be a consequence of violating an oath, if the legislature were to repeal all statutes on perjury, the constitutional and statutory provisions requiring statements to be made under oath would remain in full force and effect.

The city asks us to favor its position by taking into account societal changes, whether drastic or subtle in nature, occurring with the passage of time. When pierced to the core, the crux of the city's argument is convenience. We perceive no societal changes that suggest we should modify, on grounds of convenience, the elements of an oath that existed in 1857. Indeed, the opposite appears to be true. In 1857 there were a limited number of persons available to administer an oath. Today, there are many such persons, and by appropriate legislation, this number can be broadened. Under the version of section 805.6(4) that existed prior to the 1995 amendment, law enforcement agencies were granted broad discretion in designating persons who might administer oaths. We are convinced that article I, section 11 of the Iowa Constitution requires that misdemeanor charges be tried on information under oath and not on unsworn informations that for reasons of convenience might be accepted as a functional equivalent of an oath.

---

2. A fundamental reason to require the presence of another is that this serves to enhance the conscience of the person taking the oath. A practical reason for requiring the presence of another is to assure that the person who had knowledge of the facts is the same person who subscribed to the verification. An example of the latter situation is found in *Dalbey* in which the court considered whether the affiant was in fact the person who signed the verification. *Dalbey*, 234 Iowa at 157, 12 N.W.2d at 280. If the city's position is adopted, there is no way of assuring that the citation has actually been certified by the officer instead of some administrator in the system.

The judgment of the district court is reversed.

**REVERSED.**

All justices concur except NEUMAN, J., who takes no part.