# IN THE COURT OF APPEALS OF IOWA

No. 19-0144
Filed August 5, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JEFFREY MICHAEL HAPPE,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Story County, Paul G. Crawford (trial)

and Steven P. Van Marel (appeal), District Associate Judges .


        A defendant challenges his conviction for third-degree harassment.

**AFFIRMED.**


        John L. Dirks of Dirks Law Firm, Ames, for appellant.

        Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney

General, for appellee.


        Considered by Tabor, P.J., and May and Greer, JJ.

**TABOR, Presiding Judge.**

Jeffrey Happe appeals his simple misdemeanor conviction for harassment in the third degree. Happe contends the State offered insufficient evidence at trial. He also alleges his trial counsel was ineffective for not objecting to the prosecution as violating the separation of powers between the executive and judicial branches. Because the proof was sufficient to sustain Happe's conviction and no reason emerges for counsel to raise a separation-of-powers claim, we affirm.

## I. Facts and Prior Proceedings

During the first month of the 2018 spring semester, Happe and R.A. were groupmates for a project in their graduate-level class at Iowa State University. The group communicated through emails, calls, and texts. But R.A. testified Happe's messaging "very quickly escalated." He called her many times a day, including several calls after midnight. Once, Happe called R.A. claiming to be outside her apartment and insisted she let him inside so they could talk immediately. Happe told R.A. she "had to let him in" and "he had to talk to [her] right now." To deescalate the situation, R.A. advised Happe to contact her by email Monday through Friday between 8:00 a.m. and 5:00 p.m. But he ignored her request. She testified: "[I]t felt like it was not about the group project with the amount of emojis or jokes . . . it was an inappropriate relationship to have after I had kind of set boundaries."

Beyond the calls, Happe showed up at R.A.'s work to leave her a note and once followed her home after midnight from the student union. R.A. contacted their professor about Happe's conduct. In response, their professor said she noticed Happe would wait until R.A. took a seat so he could sit near her and would

wait for R.A. to leave the room so he could follow her. Their professor removed Happe from the project in mid-February and directed him to finish the class online. R.A. also contacted campus police. In turn, the police informed Happe that R.A. wanted no more interaction with him. He agreed not to contact her.[1]

That agreement held for six months. But in September, R.A. was sitting next to a friend in the lounge of the Parks Library when Happe entered. He sat down on the other side of her friend, which placed him about four feet from R.A. The lounge could seat around twenty people comfortably, and only five people were there. Feeling "pretty panicked," R.A. texted her friend "this is the person that was stalking me" and expressed that she "felt unsafe." The friend agreed they should leave the lounge.

As they packed up their things, Happe "leaned over" and gestured toward an abandoned water bottle, asking, "Hey, does this belong to you ladies?" R.A. did not answer, but her friend said: "'no' very short." Yet Happe persisted, trying to engage the women in conversation about the weather. R.A. "couldn't take it anymore" and walked out of the building without her friend. R.A. reported the encounter to campus police.

Acting on R.A.'s complaint, the State charged Happe with harassment in the third degree, a simple misdemeanor, in violation of Iowa Code section 708.7(1)(b), (4) (2018). After a bench trial in October 2018, a district associate judge found Happe guilty as charged. Happe appealed under Iowa Rule of Criminal Procedure 2.73. Another district associate judge affirmed the

---

[1] Before trial, the prosecutor and defense counsel stipulated that police had contacted Happe and "he understood [R.A.] did not want contact with him."

conviction. Happe then applied for discretionary review, which our supreme court granted. The supreme court then transferred the case to our court for resolution.

## II. Scope and Standards of Review

Happe's two claims call for different standards of review.

On his sufficiency challenge, we review for correction of legal error. *See State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017). We view the evidence in the light most favorable to the State. *See State v. Fordyce*, 940 N.W.2d 419, 425 (Iowa 2020). In bench trials, the court's findings of fact have the effect of a special verdict, binding us if substantial evidence supports them. *Id.*

For his ineffective-assistance-of-counsel claim, we engage in de novo review. *See State v. Ortiz*, 789 N.W.2d 761, 764 (Iowa 2010).

## III. Analysis

### A. Sufficiency of the Evidence

To convict Happe of third-degree harassment, the State had to prove the following:

- he "purposefully and without legitimate purpose"

- had "personal contact" with R.A.

- with the "intent to threaten, intimidate, or alarm" her.

*See* Iowa Code § 708.7(1)(b). The phrase "personal contact" means "an encounter in which two or more people are in visual or physical proximity to each other." Iowa Code § 708.7(7)(b). Personal contact may include physical touching or oral communication, but neither is essential. *Id.* The harassment statute required the State to prove that when Happe purposefully had personal contact with R.A., he

possessed the "specific intent to threaten, intimidate, or alarm" her. *See In re D.S.*, 856 N.W.2d 348, 352–53 (Iowa 2014).

In challenging his conviction, Happe alleges the State failed to prove that (1) he had specific intent to threaten, intimidate, or alarm R.A. and (2) he acted without legitimate purpose.[2] We will consider each element in turn.

**(1)  Specific Intent**

An actor's specific intent is a mental process seldom capable of direct proof. *State v. Walker*, 574 N.W.2d 280, 289 (Iowa 1998). But specific intent "may be shown by circumstantial evidence and the reasonable inferences drawn from that evidence." *Id.* Happe contends it was not reasonable to infer that he intended to threaten, intimidate, or alarm R.A. by approaching her in a public place, the Parks Library. He argues he had the "right to be in the same room" as R.A. and "a right to ask if a water bottle belonged to her."

But Happe's actions and surface-level innocuous statements do not exist within a vacuum. They are influenced by his history with R.A. *See State v. Evans*, 671 N.W.2d 720, 725 (Iowa 2003) (considering "prior history between the two parties" when examining intent for harassment conviction). Happe knew his unwelcome interactions with R.A. caused their professor to remove him from the

---

[2] Within his substantial-evidence argument, Happe discusses two evidentiary issues: (1) the acceptance of a stipulation that police told him not to contact R.A. and (2) the admissibility of hearsay statements by their professor. But he does not ask for a new trial based on evidentiary error. Instead, he insists the trial court should not have considered that evidence in finding him guilty. Even if we assume the court erred in admitting those two pieces of evidence, when conducting our sufficiency review, we may consider *all* evidence admitted during the trial. *See In re Stenzel*, 827 N.W.2d 690, 701 (Iowa 2013) (citing *State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003)). Happe gains no ground in urging exclusion of those two pieces of evidence as part of his sufficiency challenge.

study group and relegate him to online class. And when campus police intervened in the spring of 2018, Happe agreed not to contact R.A. As the State argues, these remedial actions informed Happe that R.A. found his behavior threatening, intimidating, or alarming.

Yet the following September, when Happe encountered R.A. in the library lounge, he chose to approach her. And not just to approach, but to sit four feet away, despite ample seating at a greater distance. Not only that, he directed a trivial question at R.A. and her friend as he noticed them leaving. And despite receiving a curt answer from R.A.'s friend, he kept trying to engage them in conversation. A fact finder may presume the accused intended the natural consequences of his acts. *State v. Chang*, 587 N.W.2d 459, 462 (Iowa 1998). Happe's "behavior would easily cause [R.A.] to feel frightened, disturbed, or in danger; such is the natural consequence of [Happe's] acts, from which the requisite intent for harassment may be inferred." *See Evans*, 671 N.W.2d at 725. The trial court reasoned: "Based on the defendant's history with [R.A.], he should have known better. Not just once, but twice engages in communication, verbal communication, personal contact. I mean, he's in physical proximity to [R.A.] as well, so that definition of personal contact is satisfied." In addressing Happe's specific intent, the court believed "given the background of the two parties, that his contact was maybe not meant to threaten her, but maybe at the very least to intimidate her or alarm her."[3]

---

[3] The trial court gave a colorful illustration of Happe's behavior:
> Given the background that he's had with [R.A.], this innocent comment from his perspective is consistent with the effect Jack Nicholson's character has in *The Shining* when he bursts through the

To counter, Happe claims people routinely interact "in ways that are offensive, concerning, or even creepy" to others without subjecting themselves to harassment charges. But here, as in *Evans*, context is key. Evans had several encounters with his victim during which she rebuffed his attention before he showed up on her doorstep uninvited. *Id.* at 722–724 (giving context to harassment charges). Similarly, Happe knew that his prior advances made R.A. so uncomfortable she reported him to their professor and police. He agreed not to contact her. Then he approached her in the library lounge and made his presence known. "It should not have been unexpected on [Happe's] part that his conduct would alarm [R.A.]." *See id.* We find substantial evidence to support Happe's specific intent.

### (2)     Without Legitimate Purpose

Happe next contends the State did not prove he acted "without legitimate purpose" by interacting with R.A. in the library. Happe equates acting with no legitimate purpose as acting with an "unlawful purpose." Because he was lawfully in the library, he contends the State could not satisfy this element of harassment.

Our supreme court addressed this element in another harassment case involving Evans. *See State v. Evans*, 672 N.W.2d 328, 331 (Iowa 2003). The court held: "Because there must be a specific intent to threaten, intimidate, or alarm, the only legitimate purpose that will avoid the criminal status conferred by the statute would be a legitimate purpose to threaten, intimidate, or alarm." *Id.*

---

door with an ax saying, "Here's Johnny." You know, that had the effect of a, "Here's Jeffrey" on [R.A.] And regardless of how innocent the defendant wants to portray his conduct, the court's not buying it.

Happe paints that passage as "circular logic" and criticizes the *Evans* decision for not giving an example of what would constitute "a legitimate purpose to threaten, intimidate, or alarm."[4]  Circular nor not, we are bound by our supreme court's rulings.  *See State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent.").

On appeal, Happe does not assert he had a legitimate purpose to act in a way that would threaten, intimidate, or alarm R.A.  *See State v. Burt*, No. 17-0546, 2018 WL 1629233, at *2 (Iowa Ct. App. Apr. 4, 2018) (rejecting defendant's claim he had a legitimate purpose to communicate with his sister when that communication took the form of a threat).  The trial court found Happe acted without a legitimate purpose when he engaged in personal contact with R.A. in the library lounge.  The court noted: "I'm not buying that the real concern about the water bottle's ownership is a legitimate purpose here."[5]  As detailed above, the court found Happe aimed to intimidate or alarm R.A. through his otherwise innocuous behavior.  Substantial evidence buoys the trial court's findings.  Happe's alleged concern over the water bottle was an excuse to interact with R.A., knowing

---

[4] We can imagine such an example.  Let's say a stranger ran up to another person on the street and informed them Jack Nicholson was on a murderous ax rampage, like his character in *The Shining*.  For sure, the stranger's purpose was to instill alarm in the other person.  But the stranger did not commit harassment because the action served the legitimate purpose of warning of an impending attack.  *See generally State v. Fratzke*, 446 N.W.2d 781, 784 (Iowa 1989) (identifying protest of government action as a legitimate purpose for offensive written communication).

[5] Happe suggests that under the trial court's rationale, only an act of "artifice or subterfuge" would satisfy the without-legitimate-purpose element.  We reject that suggestion.  The trial court believed Happe used the water-bottle inquiry as a ploy to harass R.A.  But it did not reckon that was the only means to show Happe's contact lacked a legitimate purpose.

from their history that interaction would intimidate or alarm her. Like the district court, we affirm Happe's conviction for harassment.

## B. Ineffective Assistance of Counsel

In his second claim, Happe alleges his counsel was constitutionally remiss in not raising a separation-of-powers or due-process argument at trial.[6] Happe's allegations hinge on characterizing his harassment offense as the act of "breaking a de facto, nonjudicial protective order." Because that characterization is inaccurate, Happe cannot show ineffective assistance of counsel.

To prove ineffective assistance, Happe must show (1) his attorney failed to perform an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). We presume counsel performed competently unless Happe can prove otherwise by a preponderance of the evidence. *See State v. Doolin*, 942 N.W.2d 500, 507 (Iowa 2020). "We measure counsel's performance objectively against the prevailing professional norms after considering all the circumstances." *Id.*

To start, Happe contends the "police-imposed no-contact order" violated the separation-of-powers doctrine under the Iowa Constitution, as well as his right to due process of law. He argues Iowa Code chapter 664A makes "the issuance of

---

[6] Last year, the legislature amended Iowa Code section 814.7 to bar appellate courts from deciding claims of ineffective assistance of counsel on direct appeal. *See* 2019 Iowa Acts ch. 140, § 28. But our supreme court decided those provisions did not apply to judgments entered before July 1, 2019. *State v. Macke*, 933 N.W.2d 226, 228 (Iowa 2019). Because the district court affirmed judgment in January 2019, we may consider Happe's ineffective-assistance claim on direct appeal if the record is adequate. *See State v. Kuhse*, 937 N.W.2d 622, 627 (Iowa 2020).

protective orders a judicial function." Under his reasoning, enforcement of the "de facto protective order" denied him fair notice and an opportunity to be heard.

We first examine the separation-of-powers provision:

> The powers of the government of Iowa shall be divided into three separate departments the Legislative, the Executive, and the Judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted.

Iowa Const. Art. III, § 1. This provision prohibits any of the three branches from exercising powers given to the others. *Klouda v. Sixth Judicial Dist. Dep't of Corr. Servs.*, 642 N.W.2d 255, 260 (Iowa 2002). According to Happe, as part of the executive branch, the campus police violated the doctrine by imposing a no-contact order on him, a power reserved for the judiciary. *See* Iowa Code §§ 664(A)(3), 664(A)(5). On appeal, Happe argues his trial attorney should have challenged his prosecution as an illegitimate enforcement of that de-facto nonjudicial no-contact order.

While creative, Happe's constitutional claims do not hold up on close examination. First, the record does not show that the campus police, in securing Happe's informal agreement in February 2018 not to contact with R.A., purported to have imposed a no-contact order. Second, the State did not charge Happe in September 2018 with violating a no-contact order. The charge was third-degree harassment. Happe's exchange with the campus police was not the basis for the prosecution, but it served as relevant evidence to prove his specific intent and lack of a legitimate purpose under section 708.7(1)(b).

Our supreme court has recognized the separation-of-powers doctrine has no "rigid boundaries." *Klouda*, 642 N.W.2d at 260. But, on a basic level, the legislature defines crimes and prescribes punishment; the executive has the enforcement and prosecutorial function, and the judiciary decides guilt and imposes the penalties. *See generally Doe v. State*, 688 N.W.2d 265, 271 (Iowa 2004); *Klouda*, 642 N.W.2d at 621. Following that structure, the legislature enacted the harassment statute; the police and prosecutor brought charges; and the court found Happe guilty. Trial counsel had no duty to challenge the prosecution as a violation of the separation of powers or Happe's right to due process. *See Doolin*, 942 N.W.2d at 507 (finding record adequate to decide that counsel had no duty to raise meritless objection). Happe's ineffective-assistance-of-counsel claim fails.

**AFFIRMED.**