# IN THE COURT OF APPEALS OF IOWA

No. 22-0432
Filed February 22, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**LEVAR ROBERT TURNER, JR.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Sean W. McPartland,

Judge.

        A defendant appeals his conviction, contending there is insufficient

evidence to support a determination that he had the specific intent to cause serious

injury.  **AFFIRMED.**

        John J. Bishop, Cedar Rapids, for appellant.

        Brenna Bird, Attorney General, and Linda J. Hines, Assistant Attorney

General, for appellee.

        Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

LeVar Robert Turner Jr. appeals his conviction for willful injury. His sole claim on appeal is that there is insufficient evidence to prove he acted with the specific intent to cause serious injury. We find substantial evidence supports the conviction. Accordingly, we affirm.

## I.      Background Facts and Proceedings

A rational trier of fact could find the following from the presented record. On August 19, 2020, Turner was at the home where Ronald Perdomo resided with his fiancée, who is Turner's mother, their eight-year-old daughter, and two other family members. Turner was also residing at the home in August 2020. The home lacked power because of a recent storm. Perdomo was in his bedroom on the second floor when Turner and a female friend went upstairs and encountered him. While Turner's friend continued upstairs to the third floor, Turner talked to Perdomo. Perdomo questioned whether it was a good idea for Turner to have company over because of the condition of the house and the power outage.

Turner and Perdomo dispute the exact content of the full conversation, but they agreed that it turned into an argument about Turner's failure to pay rent, the possibility of Turner moving out, Turner suggesting he would need to be legally evicted, Perdomo questioning Turner's masculinity, the possibility of a fight, and the suggestion that Perdomo might call the police. During the argument, Turner became angry with Perdomo and balled up his fists. Perdomo then left his bedroom, walked past Turner, and entered his daughter's bedroom. Turner followed Perdomo and struck him in the face with his fist as Perdomo began to turn. Perdomo testified he does not precisely remember being struck by Turner

as he immediately lost consciousness. Turner testified that after he struck Perdomo the first time, Perdomo fell to the ground gasping and was scrambling to get to his feet. He then struck Perdomo at least two more times while Perdomo was on the floor. According to Turner, he struck Perdomo because he felt threatened. Turner saw that Perdomo was bleeding. Turner gathered some things and left the scene.

Perdomo awoke in a pool of blood, with his head and torso on his daughter's bed and his knees on the floor. Blood was present in many areas of the room. Police arrived in response to 911 calls soon after Perdomo gained consciousness. A responding officer testified that upon seeing Perdomo, he observed injuries and extensive swelling to Perdomo's face such that he could not see Perdomo's right eye. The officer immediately called for an ambulance. The officer testified that Perdomo was calm and related that he had been in an argument with Turner and that Turner had struck him. The officer attempted to contact Turner but was unable to reach him.

Perdomo was taken to a hospital by ambulance and treated in the emergency room. The treating nurse practitioner testified that Perdomo had significant trauma to the right side of his face, lacerations to the bridge of his nose and the left side of his face, and an injury to his right eye. The nurse practitioner also testified that Perdomo's injuries were serious and that it was her opinion that he had been struck multiple times based on her examination. Following the examination and scan, Perdomo was transferred to a different hospital for treatment of his eye injury. Because of the severity of the injury, Perdomo's right eye was surgically removed.

Turner was charged with willful injury by trial information on November 18, 2020, in violation of Iowa Code 708.4(1) (2020). Turner waived his right to a jury trial on December 7, 2021, and the case proceeded to a bench trial on December 8. During trial, Perdomo, the responding police officer, the nurse practitioner, and Turner testified. After the close of the State's evidence, Turner moved for a judgment of acquittal, which was denied. After the close of all evidence, Turner requested the court find him guilty of a lesser-included offense. The court found Turner guilty as charged. The court sentenced Turner to an indeterminate prison term not to exceed ten years. Turner now appeals.

## II.    Standard of Review

We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). Under this standard, we are highly deferential to the verdict of the district court. *Id.* "In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (citation omitted). "[W]e will uphold a verdict if substantial record evidence supports it." *Id.* (alteration in original) (citation omitted). "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational [trier of fact] that the defendant is guilty beyond a reasonable doubt." *Id.*

## III.    Discussion

Turner contests the sufficiency of the evidence for his conviction for willful injury. To convict Turner, the district court noted it had to find: (1) Turner struck

Perdomo in the face; (2) Turner specifically intended to cause a serious injury[1] to Perdomo; and (3) Turner's acts caused a serious injury to Perdomo. It is undisputed that the State proved the first and third elements at trial beyond a reasonable doubt. On appeal, Turner only challenges the sufficiency of the evidence for the second element, his specific intent to cause a serious injury.

"Specific intent is seldom capable of direct proof." *State v. Ernst*, 954 N.W.2d 50, 55 (Iowa 2021) (quoting *State v. Walker*, 574 N.W.2d 280, 289 (Iowa 1998)). "Therefore, specific intent will often 'be shown by circumstantial evidence and reasonable inferences drawn from the evidence.'" *Id.* (quoting *Walker*, 574 N.W.2d at 289). When deciding the issue of specific intent, the fact finder may, but is not required to, conclude a person intends the natural results of his or her actions. *State v. Fountain*, 786 N.W.2d 260, 264 (Iowa 2010). And the trier of fact may look to the injuries suffered. *See State v. Decklever*, 172 N.W.2d 109, 110 (Iowa 1969) ("The extent of the injury, if any, although not in itself determinative of the intent, may be considered as bearing thereon.").

There is substantial evidence from which a rational trier of fact could infer that Turner had the specific intent to seriously injure Perdomo. Turner was visibly angry during the argument, evident by Turner balling up his fists and repeatedly asking Perdomo if he wanted to fight. Despite Perdomo trying to exit the room,

---

[1] A "serious injury" is defined in relevant part as:
> Bodily injury which does any of the following:
> (1) Creates a substantial risk of death.
> (2) Causes serious permanent disfigurement.
> (3) Causes protracted loss or impairment of the function of any bodily member or organ.

Iowa Code § 702.18(1)(b).

Turner pursued him into another room where he struck Perdomo. The first blow occurred when Perdomo was facing away from Turner, indicating he was not a threat. The assault was violent, including blows to Perdomo's face that caused Perdomo to lose consciousness. Even after Perdomo lost consciousness, Turner continued to strike Perdomo at least two more times in the face. And Turner's actions caused Perdomo to lose an eye. *See Fountain*, 786 N.W.2d at 264. Under our standard of review, "all of the record evidence [is] viewed 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *Sanford*, 814 N.W.2d at 615 (citation omitted). Viewed in this light, sufficient evidence exists in the record to support Turner's conviction. Accordingly, we affirm.

**AFFIRMED.**