**UNITED STATES of America,**
**Appellee,**

v.

**Henry B. McFARLAND, Appellant,**
**No. 245, Docket 30695.**

United States Court of Appeals
Second Circuit.

Argued Dec. 7, 1966.

Decided Dec. 29, 1966.

702

Maurice Edelbaum, New York City, for appellant.

Charles J. Fanning, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, Jack Kaplan, Douglas S. Liebhafsky, New York City, on the brief), for appellee.

Before LUMBARD, Chief Judge, and HAYS and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Appellant Henry B. McFarland was convicted of two counts of perjury before a grand jury in violation of 18 U. S.C. § 1621, after trial by jury in the Southern District of New York. Finding no error in his trial, we affirm the judgment.

Since appellant does not argue insufficiency of evidence, only a brief statement of facts is required. Since 1951, appellant had been the warden of the Hudson County Jail in Jersey City, New Jersey. In January 1965, a grand jury in the Southern District of New York was investigating the transportation of prostitutes from that district to the Hudson County Jail and the use of telephones in connection therewith. Appellant appeared before the grand jury on January 26, 1965, and the following December was indicted for perjury.

The indictment charged, *inter alia,* that the grand jury was investigating possible violations of the Mann Act, 18 U.S.C. §§ 2421–2422, and the Federal Communications Act, 47 U.S.C. §§ 203, 501, to determine if those statutes had been vio-

lated by transporting women from the Southern District for the purpose of prostitution to the Hudson County Jail, and by the use of interstate telephone facilities in connection with such transportation; that the jury was also investigating possible obstruction of the aforesaid investigation; that it was material to the investigations to ascertain appellant's relationship with one Marilyn Jean Fraser and whether appellant had accepted money from inmates of the jail for granting them special treatment such as use of telephone facilities, special meals and sleeping quarters, and visiting privileges including visits from prostitutes; and that appellant knowingly and under oath stated material matter which he did not believe to be true. There were four counts to the indictment, consisting of specifications of perjury relating to whether appellant (1) knew Miss Fraser; (2) permitted inmates, in return for money, to make telephone calls other than notification to their families that they were in custody; (3) permitted inmates, in return for money, to have special favors, such as special meals, special quarters, and visits from women; and (4) permitted prostitutes to visit one Harold Konigsberg and other inmates. Before the grand jury, appellant flatly denied knowing Miss Fraser or giving such permission. At trial, before the case was submitted to the jury, the first and fourth counts were dismissed for insufficiency of proof. On the second and third counts, there was ample evidence (if believed by the trial jury) that appellant, in return for money, had permitted inmates to make telephone calls and have special favors.[1]

■ Appellant asserts that the dismissed counts were the only ones directly dealing with prostitution [2] and that their elimination, combined with the alleged

irrelevance of the Federal Communications Act to any of the activities under investigation by the grand jury, made the remaining two counts inherently unsuitable for a federal perjury prosecution. Our vagueness in recounting appellant's principal point reflects the cloudiness of the argument. As best we can tell, appellant's claim is that since the Mann Act vanished from the case at the trial stage, the remaining questions and answers could not have been material or constitutionally proper at the grand jury stage because they were only an excursion into non-federal matters.

■■ We think appellant is grossly mistaken as to the purpose and the proper application of the perjury statute that the trial jury found he had violated, 18 U.S.C. § 1621. Essentially, the statute punishes lying under oath before a federal official or tribunal. No claim is made that the Government does not have a constitutionally enforceable interest in prohibiting such perjury. To be within the reach of section 1621, the lies must be material, which in this case means that "the false testimony * * * [must have] a natural effect or tendency to influence, impede or dissuade the grand jury from pursuing its investigation." United States v. Marchisio, 344 F.2d 653, 665 (2d Cir. 1965), quoting Carroll v. United States, 16 F.2d 951, 953 (2d Cir.), cert. denied, 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880 (1927).[3] Appellant's crime is thus committed in front of the grand jury, and materiality must be established only as of the time his answers were given. Materiality cannot "vanish" from the case "by the time it is submitted for the Trial Jury's consideration," as appellant contends; "materiality" refers merely to the relationship between the interrogation and the grand jury's ob-

---

1. E. g., one inmate testified that he had paid the warden sums of money and received various favors including use of the telephone, the latter to such an extent that the warden complained "that I made too many telephone calls and I talked too long on the phone, that the bill was kind of high."

2. The theory of the prosecution was that Miss Fraser (mentioned in the first count) visited the jail for purposes of prostitution.

3. Materiality is a question for the court, and the trial judge properly reserved that issue to himself. United States v. Marchisio, 344 F.2d 653, 665 (2d Cir. 1965).

jective at the time. Cf. United States v. Siegel, 263 F.2d 530, 533 (2d Cir.), cert. denied, 359 U.S. 1012, 79 S.Ct. 1147, 3 L.Ed.2d 1035 (1959). Moreover, despite appellant's casual use of the term, there is no such concept as a "Mann Act perjury" case under section 1621; a charge of lying under oath brought under that provision does not carry a burden of characterization of the lies according to another criminal statute. Once it be conceded that the grand jury was investigating matters within its jurisdiction, materiality to that investigation is the only link the Government must establish between the testimony and the federal criminal law.

Applying these principles to this case, it is apparent that whether appellant was accepting money for allowing inmates unusual telephone privileges (the second count) and special favors (the third count) would have a bearing on an investigation into whether prostitutes were being illegally transported to the jail. Appellant does not seem to deny that the grand jury was investigating possible Mann Act violations. In any event, there is no doubt but that the second and third counts concerned material testimony. It is therefore unnecessary to deal with appellant's additional involved contention that the questions and answers contained in the second and third counts were also not material to possible violations of the Federal Communications Act, an argument that apparently calls for us to overrule United States v. Harris, 334 F.2d 460, 463 (2d Cir. 1964), rev'd on other grounds 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965).

■ Appellant also apparently claims that the entire testimony of Government witness Pollack should have been stricken after he invoked his privilege against self-incrimination and refused to answer two questions on cross-examination. These were whether Pollack had ever used another name, and whether he had numerous safe deposit boxes around the country in January 1966. These matters did not bear on appellant's guilt or innocence; they went to the witness's cred-

ibility only. Since appellant consumed a good part of two trial days in cross-examining Pollack, any contention that the cross-examination was improperly curtailed is almost ludicrous. In any event, the claims of privilege did not require striking of the witness's direct examination. United States v. Cardillo, 316 F.2d 606, 611 (2d Cir.), cert. denied, 375 U.S. 822, 857, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963).

■ Finally, appellant argues he was denied a fair trial by the prosecution's failure to timely and voluntarily disclose the psychiatric history of a Government witness. The issue arose in the following way: On cross-examination, the witness replied to defense counsel's inquiry as to her employment that she had been a patient in the Manhattan State Hospital for the mentally ill for eight months and had left eight months before trial. The prosecution objected to this line of inquiry and, when defense counsel asked for the right to examine the hospital records, objected to that too. At the trial judge's direction, the records were obtained and submitted to him over the week-end; in his words, they disclosed

[T]hat this young lady witness has had a series of problems for some time. They were somewhat of a physical nature at times and somewhat of a mental nature at times, but here she has been produced on this stand and she has given direct testimony.

I have examined the Manhattan State Hospital clinical summary and the recommendation made by Dr. Mavaroic was a diagnosis of "Schizophrenia (other types) and schizo-affective."

Her condition was reported much improved on September 17, 1965 * * *.

\* \* \* \* \* \*

And on September 17, 1965, the patient was discharged in her own custody.

The records were then turned over to defense counsel to examine.

■■ We have carefully considered the question and do not find any harm to appellant from this incident: Defense

counsel eventually learned all the facts of the witness's history in time to make full use of it on cross-examination, did get before the jury the essential information affecting her credibility, did not ask for any further adjournment, and did not move to strike the witness's direct testimony on the ground of incompetence. Cf. Kyle v. United States, 297 F.2d 507, 513–514 (2d Cir. 1961). The fact that the witness had been a patient in a mental hospital did not render her incompetent as a matter of law, see 2 Wigmore, Evidence § 497 (3d ed. 1940), and the trial judge handled the matter properly. However, this does not mean that the prosecutor's conduct was justified. We do not understand his position that it was irrelevant for defense on cross-examination to bring out that a key prosecution witness had recently been in a mental hospital for several months. Moreover, the Government's silence[4] as to the prior psychiatric history of the witness was ill-advised, as was its own apparent failure to check further on the competence of the witness before calling her.[5] It must be emphasized that the Government cannot play it "close to the vest" in administering federal criminal justice, when duty and conscience dictate that certain facts should be disclosed to insure a fair trial. Matters bearing on the competence of a witness to testify are of the gravest import, and the prosecutor may not disregard them or leave it to chance that his adversary will learn of them. Cf. Powell v. Wiman, 287 F. 2d 275, 278–279 (5th Cir. 1961); Note, The Prosecutor's Constitutional Duty to Reveal Evidence to the Defendant, 74 Yale L.J. 136 (1964).

The judgment is affirmed.

4. We do not imply by this that the Government acted unethically. The Government correctly claims that it did disclose to the court that the witness had been treated psychiatrically at Mt. Sinai Hospital. The disclosure was contained in one of the exhibits submitted to the court under the Jencks Act after direct examination of the witness had been concluded. However, there was at least a question as to whether this information should have been made known to defense counsel sooner; the matter, therefore, should have been specifically taken up with the court before the witness took the stand. Defense counsel could then have been apprised of the witness's history under appropriate judicial supervision.

5. The prosecution had not seen the voluminous hospital records, but was aware that the witness had been treated psychiatrically at Mt. Sinai Hospital.