**STATE of Iowa, Appellee,**

v.

**Michael Lee HAWKINS, Appellant.**

**No. 99–0179.**

Supreme Court of Iowa.

Dec. 20, 2000.

Linda Del Gallo, State Appellate Defender, and John P. Messina, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Karen B. Doland, Assistant Attorney General, Michael Short, County Attorney, and Bruce C. McDonald, Assistant County Attorney, for appellee.

NEUMAN, Justice.

This is an appeal by defendant, Michael Lee Hawkins, from the judgment and sentence entered upon his convictions of two counts of perjury as an habitual offender in violation of Iowa Code sections 720.2 and 902.8 (1997). The perjury charges stem from Hawkins' testimony during a postconviction relief hearing. His testimony contradicted statements made in his prior guilty-plea colloquy to the charge of delivery of methamphetamine.

Hawkins now claims entitlement to reversal because (1) his voluntary dismissal of the postconviction relief action negated the materiality of his perjurious statements, (2) he would have prevailed on a statutory retraction defense but for counsel's failure to urge it, and (3) personal belief does not constitute a "fact" under the perjury statute, a dispositive legal issue his trial counsel failed to urge. Finding no merit in any of these contentions, we affirm the district court judgment.

## I. Background Facts and Proceedings.

The State charged Hawkins with two counts of delivery of a schedule II controlled substance (methamphetamine) by a trial information filed in January 1996. The charges stemmed from controlled drug buys involving a confidential informant named Rick Hardman. In exchange for dismissal of one of the charges, Hawkins agreed to plead guilty to one count of delivery of methamphetamine.

During the guilty-plea colloquy Hawkins affirmatively stated that no threats or promises had been made to induce his guilty plea. He also acknowledged that he had discussed the matter thoroughly with his counsel, was satisfied with his representation, and that he was, indeed, guilty as charged. Summing up the factual scenario, Hawkins told the court "I sold some crystal to Rick Hardman."

Although hoping for a deferred or suspended sentence, Hawkins received a prison term for his offense. Roughly four months later he filed a pro se petition for postconviction relief. The petition, as later amended by court-appointed counsel, asserted that Hawkins' guilty plea had not been knowing and voluntary but was instead the product of ineffective counsel who had failed to properly investigate the facts and charges, ultimately forcing him to plead guilty.

At the evidentiary hearing that followed, Hawkins denied that he delivered drugs and testified that his attorney pressured him into accepting the State's plea offer when he, in fact, wanted to go to trial. Because that testimony formed the basis for the perjury charges now under review, we quote it here:

Q. Do you recall the judge asking whether it was your voluntary act to plead guilty on that day? A. I remember him saying that.

Q. Did you tell him it was? A. Yeah, I did. I did, but I just felt like I was coerced into it.

Q. Why did you feel that way? A. 'Cuz when I had mentioned that I had wanted a jury trial and things, Mr. Henson acted like he just didn't want to act on that. I just—You know, if you have a lawyer that you tell him what you want to do and he keeps talking against it, then when you know you got witnesses that you just want them to, you know, tell the truth about something and he doesn't want to call them, I guess you begin to feel a little disgusted about the whole deal anyway.

. . . .

Q. And the Court asked you to indicate what the facts of the case were at the time and you responded, "I sold some crystal to Rick Hardman." You recall saying that? A. Yes, I do.

Q. And today you're telling the Court that you did not sell crystal to Rick Hardman? A. No, I never.

Rather than rule from the bench, the court took Hawkins' postconviction application under advisement. About three weeks later, before the court had ruled, Hawkins sought the court's permission to dismiss the action. His motion stated that he believed it "would fail based on the current state of the law." The district court granted the motion.

The State then charged Hawkins with perjury based on his testimony at the postconviction hearing. The trial information specified two allegedly perjurious statements: Hawkins' denial that he sold drugs to Hardman and the claim he believed his attorney coerced his plea. Following a trial in which the State introduced Hawkins' contradictory testimony into evidence, the jury returned guilty verdicts on both charges. This appeal by Hawkins followed.

## II. Scope of Review.

■ Claims of insufficient evidence, preserved by motion for judgment of acquittal, are reviewed on appeal for errors at law. *State v. Walker,* 574 N.W.2d 280,

283–84 (Iowa 1998). We are bound by the jury's verdict unless we determine it is not supported by substantial evidence. *Id.* at 284. In making that determination, we consider the evidence in the light most favorable to the State. *Id.*

■ Ineffective assistance of counsel claims, being constitutional in nature, are reviewed by this court de novo. *State v. Westeen,* 591 N.W.2d 203, 207 (Iowa 1999).

### III. Issues on Appeal.

■ *A. Effect of dismissal.* Hawkins begins by asserting he was entitled to judgment of acquittal, as a matter of law, because the voluntary dismissal of his postconviction action negated the materiality of the false testimony he gave during the postconviction hearing. The State counters that, for purposes of a criminal prosecution, the materiality of a statement is measured at the time it is made. Hawkins does not disagree with this assertion but insists that, under the record before us, when he "cancelled his case, he cancelled his falsehoods."

■ We begin with the undisputed premise that proof of the materiality of a factual assertion is an essential element of the crime of perjury. The governing statute, Iowa Code section 720.2, states in pertinent part:

A person who, while under oath or affirmation in any proceeding or other matter in which statements under oath or affirmation are required or authorized by law, knowingly makes a false statement of *material* facts or who falsely denies knowledge of *material* facts, commits a class "D" felony.

(Emphasis added.) A statement of fact is material if it

directly or circumstantially (1) supports or attacks the credibility of a witness, or (2) has a legitimate tendency to prove or disprove some relevant fact irrespective of the main fact at issue, or (3) is capable of influencing the court, officer, tribunal or other body created by law on any proper matter of inquiry.

*Walker,* 574 N.W.2d at 284 (quoting *State v. Deets,* 195 N.W.2d 118, 122 (Iowa 1972)).

We have not before had occasion to address the effect of a dismissal on the materiality element of a perjury prosecution. At least one federal court has wrangled with the question, however. In *United States v. McFarland,* 371 F.2d 701 (2d Cir.1966), the court of appeals reviewed the perjury convictions of a prison warden investigated for permitting prostitution with inmates. The warden had been charged and convicted of lying under oath to the grand jury but claimed on appeal that false statements given in connection with the investigation of *dismissed* charges could not be considered material. *McFarland,* 371 F.2d at 703. The appeals court, observing materiality must be established as of the time the false answers are given, rejected the notion that perjury can "vanish" if a count to which it pertains is withdrawn from the jury's consideration. *Id.* In other words, the court held, materiality turns on the relationship between the interrogation and the matters under investigation at the time. *Id.* at 704; *see also United States v. Norris,* 300 U.S. 564, 574, 57 S.Ct. 535, 539, 81 L.Ed. 808, 813 (1937) (retraction defense unavailable to senator charged with perjury because perjury complete "when a witness's statement has once been made"); *United States v. Lococo,* 450 F.2d 1196, 1199 n.3 (9th Cir.1971) (because materiality tested as of time of inquiry, later proof that truthful statement would not have helped grand jury does not render false testimony immaterial).

Implicit in these decisions is the notion that the essential nature of a statement does not change depending on the outcome of the proceedings in which it is asserted. Hawkins urges us to reject this rationale in favor of permitting a misguided prisoner to abandon a fraudulent claim without penalty, ostensibly on the ground such second thoughts would be rejected anyway. We are not inclined to do so. As the United

States Supreme Court has observed, accepting such an argument would effectively ignore the fact

> that the oath administered to the witness calls on him freely to disclose the truth in the first instance and not to put the court and the parties to the disadvantage, hindrance, and delay of ultimately extracting the truth by cross-examination, by extraneous investigation, or other collateral means.

*Norris,* 300 U.S. at 574, 57 S.Ct. at 539, 81 L.Ed. at 813.

■ If, as we firmly believe, the pursuit of truth is at the heart of all judicial proceedings, neither precedent nor policy supports the argument Hawkins advances. We hold that dismissal of an action does not negate the materiality of false statements made therein under oath. The district court correctly rejected Hawkins' argument to the contrary.

**B. *Retraction defense.*** Hawkins next claims that trial counsel in his perjury case was ineffective because he failed to plead and assert the retraction defense that is incorporated into Iowa Code section 720.2. The statutory defense states: "No person shall be guilty of perjury if the person retracts the false statement in the course of the proceedings where it was made before the false statement has substantially affected the proceeding." Iowa Code § 720.2. Counsel's failure to properly raise the issue at trial, Hawkins submits, deprived him of the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. *See Strickland v. Washington,* 466 U.S. 668, 684–86, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674, 691–92 (1984).

■ The State concedes defense counsel's waiver of this issue at trial enables Hawkins to now assert it on appeal as an ineffective assistance of counsel claim. *State v. Lucas,* 323 N.W.2d 228, 232 (Iowa 1982). To prevail on such a claim, Hawkins must prove (1) that counsel failed to perform an essential duty, and (2)

prejudice resulted. *Westeen,* 591 N.W.2d at 207. But "[c]ounsel is not ineffective when the issue counsel failed to raise has no merit." *Id.* Here, the State insists Hawkins was not entitled to the retraction defense as a matter of law, therefore counsel was not ineffective for failing to raise it. For the reasons that follow, we agree.

■ Hawkins correctly argues the retraction defense contains three essential elements. Considered in context, they are: (1) whether by voluntarily dismissing his postconviction action Hawkins "retracted" his false testimony, (2) whether a posttrial dismissal meets the statutory requirement of "in the course of the proceedings," and (3) whether his dismissal motion occurred before his false statements "substantially affected the proceeding." *See* Iowa Code § 720.2. Hawkins claims the first two elements are established as a matter of law under the record before us. As for the impact of his false statements on the dismissed proceeding, he contends the jury should have been permitted to weigh the evidence.

Turning to the first element—whether a voluntary dismissal constitutes a retraction—we note that the term "retract" is not defined in the perjury statute. So we apply its common meaning. *See Westeen,* 591 N.W.2d at 208. To retract means "to draw back" or "to recant or disavow something." Webster's Ninth New Collegiate Dictionary 1007 (1986). Hawkins concedes on appeal that he did not specifically disavow or take back the false statements at issue. But he contends "he accomplished as much by withdrawing his whole postconviction claim and dismissing the case." We are not so convinced.

■ The essential purpose of a retraction or recantation defense is to encourage a perjurer to set the record straight, that is, to reveal the truth. *State v. Hanson,* 302 N.W.2d 399, 402 (N.D.1981). As one federal court has aptly noted,

> [u]nlike insanity or entrapment, recantation does not excuse a defendant be-

cause it makes him any less guilty, or justifies his otherwise criminal conduct. Rather, statutory recantation erects a barrier that permits escape from prosecution, despite guilt, in the interest of encouraging corrected testimony and thereby improving the functioning of judicial proceedings.

*United States v. Moore,* 613 F.2d 1029, 1037 (D.C.Cir.1979). Although the wording of the federal perjury statute, unlike our own, specifically conditions the retraction defense on an affirmative admission that prior testimony was false, *see id.* at 1038 (quoting 18 U.S.C. § 1623(d) (1976)), federal court decisions nevertheless illuminate our view of the permissible scope of a retraction defense. It has been held, for example, that entitlement to the defense requires more than an expression of uncertainty about the thrust of a prior inquiry, *United States v. Goguen,* 723 F.2d 1012, 1017 (1st Cir.1983), or a claim that, if the prosecutor had reopened grand jury proceedings, prior testimony would have been corrected, *United States v. D'Auria,* 672 F.2d 1085, 1091–92 (2d Cir.1982). Observing that "[t]he law has little tolerance for half-baked explanations of phony testimony," the court in *Precision Window Manufacturing v. NLRB,* 963 F.2d 1105, 1110 (8th Cir.1992), refused to extend the benefit of retraction to a worker whose recanted testimony had to be "hammered out" of him on cross-examination. And in *Adams v. State,* 727 So.2d 983, 984 (Fla.Dist.Ct. App.1999), the appeals court rejected a perjurer's claim that her efforts to recant her prior false testimony were rejected by the prosecutor, a belated plea the court deemed insufficient as a matter of law under Florida's perjury statute.

These decisions make plain that the essence of retraction is the act of uncovering the truth. And uncovering the truth involves not only admitting a lie has been told, but also admitting what really happened. Hawkins did neither when he voluntarily dismissed his postconviction action. His motion to dismiss stated he believed his action would be unsuccessful, not that he wanted to withdraw or disavow its allegations. Moreover the State's perjury case rested, not on the contents of Hawkins' postconviction application, but on the substance of his trial testimony. Hawkins' brief cites no authority for the proposition that dismissing a pleading or action thereby "dismisses" the testimony given to support it.

We hold, as a matter of law, that mere dismissal of an action—without more—does not amount to a taking-back or disavowal of testimony required to satisfy the retraction element of the statutory defense to Iowa Code section 720.2. Because the record does not furnish an evidentiary basis for submission of this essential element of the perjury defense to the jury, Hawkins' counsel was not ineffective for failing to urge it. Moreover our decision makes it unnecessary to consider whether Hawkins' post-trial dismissal was done "in the course of the proceedings" or before the testimony "substantially affected the proceeding." *See* Iowa Code § 720.2. No ground for reversal appears.

■■■ C. *False statement of fact or belief.* Hawkins' third assignment of error also rests on a claim of ineffective assistance of counsel. But for his attorney's failure to move for judgment of acquittal, Hawkins claims, he would have been acquitted on count II of the State's trial information because a personal opinion or belief is not a false "fact" subject to prosecution under Iowa's perjury statute. The State counters that a false statement of opinion or belief may constitute perjury if, in fact, the witness held no such opinion or belief at the time the assertion was made. Thus, the State argues, the record supports a guilty verdict in connection with Hawkins' statement that he believed his lawyer coerced his guilty plea; no motion for judgment of acquittal would have been successful.

By its terms, Iowa's current perjury statute (as amended upon adoption of the "new" criminal code in 1978) specifically

criminalizes only the making of false statements of material "facts." Iowa Code § 720.2. The former perjury statute, quoted at length in *State v. Deets*, 195 N.W.2d 118, 122 (Iowa 1972), made it a crime to swear or affirm falsely to any material "matter or thing." *See* Iowa Code § 721.1 (1966). Thus we held in *Deets* that, to sustain a charge of perjury, the State must establish proof of a "false statement of fact, *opinion or belief.*" *Deets*, 195 N.W.2d at 122 (emphasis added); *accord Walker*, 574 N.W.2d at 284; *State v. Gartin*, 271 N.W.2d 902, 908–09 (Iowa 1978). Hawkins now claims that the legislature's decision to change the statute in 1978 by penalizing only false statements of "fact" reveals an intent to eliminate prosecutions like the one before us—prosecutions that, in his words, are "grounded on personal, subjective views on a given matter, no matter how insincerely held."

■ We begin by noting we did not address the precise issue Hawkins now raises in either *Gartin* or *Walker*. We also note that Hawkins is correct when he states that, in general, to sustain a charge of perjury, the alleged false statement "must be one of fact, and not of opinion or belief." 60A Am.Jur.2d *Perjury* § 22, at 1080 (1988). The rule is subject to qualification, however, when—as a matter of fact—the witness is alleged to have held no such opinion or belief. *Id.* § 23, at 1081. Numerous states have applied the rule and its caveat to uphold perjury convictions in the face of defendants' claims that their fabrications voiced only opinions, not facts, and were thus not criminal. *See People v. Webb*, 74 Cal.App.4th 688, 88 Cal.Rptr.2d 259, 264 (1999) (in action for perjurious statements made to fraudulently obtain worker's compensation benefits, court held opinion testimony regarding pain and disability constitutes perjury if witness does not honestly hold opinion to which he testifies); *People v. Drake*, 63 Ill.App.3d 633, 20 Ill.Dec. 544, 380 N.E.2d 522, 524 (1978) (motion to dismiss reversed on appeal in action for perjury committed in bond reduction hearing, in recognition of rule that "statement of belief or opinion may constitute perjury when, as a matter of fact, the witness had no such belief or opinion"); *State v. McCaslin*, 240 Neb. 482, 482 N.W.2d 558, 564 (1992) (held person may be convicted of making false statement under oath when statement based on belief known to be false); *State v. Sullivan*, 24 N.J. 18, 130 A.2d 610, 615–16 (1957) (in appeal from conviction for perjury committed by state medical witness whose testimony "varied violently" on retrial of criminal defendants, court rejected doctor's "opinion" defense, holding where existence or nonexistence of opinion or belief is itself a material matter of fact, a false statement about it may constitute perjury); *Brasher v. State*, 715 S.W.2d 827, 831 (Tex.Ct.App. 1986) ("A person who willfully swears falsely to a belief in the existence of a fact which he knows does not exist is as guilty of perjury as if he had sworn directly to the existence of a fact which he knew did not exist.").

■ Turning to the case before us, the issue is not—as Hawkins frames it—whether he honestly believed he was being coerced into pleading guilty at the time of his postconviction hearing. The issue is whether he actually held that belief at the time of the guilty plea hearing or only claimed coercion, after the fact, to support his postconviction application. In other words, the case does not turn on opinion, but fact. *See Shorette v. Maine*, 402 A.2d 450, 453 (Me.1979) ("the existence or nonexistence of an opinion or belief is, in itself, a matter of fact, and, if material, the false statement of opinion or belief may constitute [perjury]"). Whether Hawkins believed in the truth of his postconviction testimony, when uttered, was a question uniquely within the province of the jury. *McCaslin*, 482 N.W.2d at 564.

The record before us contains ample evidence from which a jury could determine Hawkins' postconviction assertion about his counsel was false and fabricated solely to secure reversal of his conviction. Hawkins' trial counsel on the drug delivery

charges, John Henson, testified at length about representing Hawkins, counseling him regarding his plea, and discussing with him the right to file a motion in arrest of judgment, a maneuver Hawkins declined. Contrary to Hawkins' assertion, Henson testified that he routinely offers his clients his opinion on the value of tendered plea bargains, but would never force a client to plead guilty rather than go to trial. This includes taking cases to trial, Henson asserted, that should have been resolved by guilty plea.

The jury also had the opportunity to listen to the testimony given by Hawkins at his postconviction hearing and compare it with the testimony he gave at the plea colloquy. The testimony was flatly contradictory. In ultimately deciding which record to credit, the jury was entitled to disbelieve the truth of Hawkins' postconviction assertions. The jury was likewise entitled to consider Hawkins' motives when weighing the credibility of his testimony.

Because the trial court committed no error in submitting count II of the trial information to the jury and substantial evidence in the record supports the verdict rendered, Hawkins cannot prove he was prejudiced by his counsel's failure to move for judgment of acquittal. Accordingly we affirm the district court's judgment convicting Hawkins of two counts of perjury as an habitual offender.

**AFFIRMED.**

McGIVERIN, S.J.*, participates in place of LARSON, J., who takes no part.

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1999).