# IN THE COURT OF APPEALS OF IOWA

No. 14-1615
Filed October 28, 2015

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MARK GABRIEL MARTIN,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Christopher

C. Foy, Judge.


A defendant appeals his conviction for delivery of methamphetamine.

**AFFIRMED**.


Sarah A. Reindl of Reindl Law Firm, Mason City, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik and Tyler J. Buller,

Assistant Attorneys General, Carlyle Dalen, County Attorney, and Blake Norman,

Assistant County Attorney, for appellee.


Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, Presiding Judge.**

A Cerro Gordo County jury returned a guilty verdict in the methamphetamine delivery trial of Mark Martin. Martin challenges his conviction by raising four issues on appeal. First, he contends the district court abused its discretion in denying his motion for mistrial based on the prosecutor's statements during jury selection. Second, he objects to a law enforcement officer's testimony concerning a recording of the controlled drug buy. Third, he argues the court wrongly instructed the jury to consider law enforcement officers as experts. And fourth, he asks us to reverse on the sufficiency of the evidence.

On the first issue, we agree with the district court's assessment that the prosecutor's voir dire questions teetered "on the line" between proper and improper but did not require a mistrial. On the second issue, Martin did not preserve error. On the third claim, we find the court properly instructed the jury regarding expert testimony. Finally, we find ample evidence in the record to support Martin's conviction. Accordingly, we affirm.

## I.    Background Facts and Proceedings

Jeremy Collins was a drug user who agreed to be a confidential informant (CI) for the North Iowa Drug Task force to avoid serving two years' incarceration. Collins signed a CI agreement on July 3, 2013. As part of his informant duties, Collins told Cerro Gordo County Deputy Sheriff Frank Hodak that Collins could purchase "crystal meth" from Mark Martin.

A controlled buy was set for July 15, 2013. Collins met with Deputy Hodak and Investigator Dustin Buck in the Shopko parking lot. Investigator Buck patted

down Collins and did not discover any contraband. The officers provided Collins with a digital recorder and forty dollars to buy a quarter gram of methamphetamine. The officers then followed Collins to Martin's house.

The officers could see four other men at the house but not Martin. Collins entered through a fence near the door. After about half an hour, Martin returned home. According to the State's audio-recording, without much discussion, Collins gave Martin the forty dollars and received a baggie of methamphetamine in return. Collins then left Martin's home and rendezvoused with the officers, handing over a quarter gram of methamphetamine.

The State charged Martin with delivery of methamphetamine, in violation of Iowa Code sections 124.401(1)(c)(6) and 124.413 (2013), by trial information filed on January 6, 2014. A jury heard the case on February 25 through 27. Martin received an indeterminate ten-year sentence, which the court suspended. He now appeals.

## II.    Scope and Standards of Review

We review the denial of a motion for mistrial to see if the district court abused its wide discretion. *State v. Brotherton*, 384 N.W.2d 375, 381 (Iowa 1986). Going hand-in-hand with that deferential review is the concept that control of the jury selection process, known as voir dire,[1] is lodged in the sound discretion of the trial judge. *State v. Tubbs*, 690 N.W.2d 911, 915 (Iowa 2005).

---

[1] Voir dire means "to speak the truth." *State v. Webster*, 865 N.W.2d 223, 237 (Iowa 2015).

On the question of the jury instruction regarding expert testimony, our review is for correction of errors at law. *See State v. Guerrero Cordero*, 861 N.W.2d 253, 257-58 (Iowa 2015). Any error in giving an instruction over an objection does not warrant reversal unless it results in prejudice to the objecting party. *Id.*

We review Martin's claim of insufficient evidence for errors at law. *See State v. Hawkins*, 620 N.W.2d 256, 258-59 (Iowa 2000). If the jury's verdict is supported by substantial evidence, it is binding upon us. *Id.* at 259. In making a substantial-evidence determination, we consider the record in the light most favorable to the State. *Id.*

## III. Legal Analysis

### A. Voir Dire

Martin's foremost complaint on appeal is the voir dire questioning by the prosecutor. Martin asserts: "[T]he State repeatedly made comments and asked questions to establish the theme that law enforcement officers are the good guys and honest." Particularly, Martin draws our attention to the following exchanges between the prosecutor and potential jurors:

> [Prosecutor]: What's your thoughts on law enforcement?
> PROSPECTIVE JUROR C.: I have a daughter in law enforcement and a son-in-law in law enforcement.
> [Prosecutor]: Oh, okay. And so obviously they're good—good hard working people; right?
> PROSPECTIVE JUROR: Correct.
> [Prosecutor]: All right. Raised them right.

The prosecutor asked similar questions to another juror.

> [Prosecutor]: And overall what's your kind of feeling about law enforcement?

PROSPECTIVE JUROR N.: Oh, generally good. Much like the two previous guys. I think they have a hard task. And I think they're doing the job the best they can. There's always a few bad apples out there with anything. But generally they're doing their job.

[Prosecutor]: Now, do you think officers—for the most part, do they ever lie about what they're doing? Do you think they're just trying to uphold the law and do their job?

PROSPECTIVE JUROR N.: Again, for the most part, yes, I believe that's what they are trying to accomplish is to uphold the law and do everything they can within the power of that.

The prosecutor later discussed the role of his own office in the criminal justice system.

[Prosecutor]: What's your overall feeling about law enforcement?

PROSPECTIVE JUROR B.: Well, I would agree with what everyone else has said. I think you have a variety of people in any kind of position. And for the most part they probably do a good job. Some are probably—You're just going to have a variety of responses to situations.

[Prosecutor]: Okay. And do you think there's certain procedures though that kind of safeguard that officers can't overstep their bounds?

PROSPECTIVE JUROR B.: We hope so.

[Prosecutor]: Well, we have public accountability is one of them.

PROSPECTIVE JUROR B.: Uh-huh.

[Prosecutor]: And we also have the jury system.

PROSPECTIVE JUROR B.: Uh-huh.

[Prosecutor]: We also have me as the County Attorney. I don't know if many of you know this but the County Attorney is actually the chief law enforcement officer for the county.

PROSPECTIVE JUROR B.: Okay.

[Prosecutor]: So he's in charge of some of the administrative. So I didn't know if you know that. In fact, I don't know if many of you know kind of what the County Attorney's office is. . . . We work and represent the State. But we're actually—It's an elected office for the county. So you, as a citizen of Cerro Gordo, get to elect who is the prosecutor for Cerro Gordo County. I don't know if any of you knew that.

The prosecutor continued to discuss his office with other prospective jurors.

> [Prosecutor]: And do you vote for the County Attorney or do you not or do you just—
> PROSPECTIVE JUROR B.: No, I didn't.
> [Prosecutor]: Okay.  Okay.  Some people don't and that's why I didn't know if you just voted the main elections.  Okay.  But do you understand that in some ways my office is bound to serve Cerro Gordo citizens?
> PROSPECTIVE JUROR B.: Yes.
> [Prosecutor]: So if I do something wrong and it represents badly on my boss, that he's actually accountable to you as a citizen if I do something wrong.
> PRSPECTIVE JUROR B.: Yes.

Martin also expresses displeasure with the prosecutor's use of hypotheticals—asking prospective jurors to envision themselves as drug dealers or confidential informants.

At trial, defense counsel repeatedly asked to approach the bench to object to the prosecutor's voir dire questions concerning the bias toward law enforcement and the hypothetical questions.[2]  Eventually, counsel argued the jury had been "tainted enough that we should have a mistrial."  Counsel complained that the prosecutor "asked specific credibility questions about a witness. . . .  In fact, he asked is he a good guy.  Referring to Frank Hodak."[3]

---

[2] The State contends Martin did not preserve error on his complaints regarding the prosecutor's voir dire questions.  Our review of the record shows prompt objections and a timely motion for mistrial, which preserved the issue for appeal.

[3] The prosecutor had the following exchange with a prospective juror who knew Deputy Hodak from her workplace:
> [Prosecutor]: What's your overall feeling of Mr. Hodak?
> Prospective Juror O.: I don't know him any more.
> [Prosecutor]: Okay. But was he a good guy I guess whenever you knew him?
> Prospective Juror O.: He was back then.  Yes.

The State resisted the mistrial motion, contending his questions were proper: "The discussion about Frank Hodak was primarily because the juror knew him." The prosecutor alternatively argued that if he did "cross the line" that defense counsel could correct any taint in her own voir dire.

The district court explained "in general either side is free to inquire of prospective jurors their general opinions of law enforcement—their experiences with law enforcement." But the court agreed the State ventured into a "gray area" by specifically asking a prospective juror's view of the reputation of an anticipated witness. The court also expressed its "concerns about the line of questioning pursued by the State with respect to how drug transactions transpire or who—somebody who is interested in selling drugs might screen prospective buyers or make a decision about who they sell to." In the court's opinion, that was "getting a little too much testing about how a prospective juror . . . might view the facts of the State's case." Although the court agreed with some of the defense arguments, it did not find the prosecution's overstepping prevented Martin from receiving a fair trial. The court denied the mistrial motion and left it to defense counsel to "address whatever concerns you have about the State's voir dire as you proceed in your voir dire." The court also said it would consider an admonishment to the jury if Martin sought such an instruction.

Defense counsel then questioned the prospective jurors concerning their views on how to judge witness credibility and drug laws, among other topics. Counsel also asked the jury pool who had an interest in the case and confirmed

that prospective jurors believed that police officers had an interest because they filed the original charges.

In his motion for new trial after the verdict, Martin returned to the mistrial issue. The court reasoned: "[T]he questions asked by the State, while they may have been on the line between proper voir dire and improper voir dire, I don't believe they were so inflammatory as to prejudice Defendant or somehow affect his right to a fair trial." The court also noted the jurors received an instruction that the questions by the attorneys were not to be considered as evidence.

On appeal, Martin identifies the dual purpose of voir dire as (1) enabling the court to select an impartial jury and (2) assisting counsel in exercising peremptory challenges. *See State v. Windsor*, 316 N.W.2d 684, 686–87 (1982) (announcing "[v]oir dire is not designed for educating jurors on the law or for persuading them on the merits of the case"). Martin argues the district court must be reversed because the prosecutor's conduct during voir dire (including comments on witness credibility, the use of hypotheticals, and the discussion of the county attorney as the chief law enforcement officer) was "patently improper." But Martin does not point to any case law confirming that impropriety.

As the district court astutely observed in ruling on Martin's motion for mistrial and motion for new trial, the prosecutor's approach to voir dire fell into a "gray area" and skated on the line of impropriety. But we cannot conclude, as Martin advocates on appeal, that the prosecutor's questions crossed the line. Accordingly, we find no abuse of discretion in the district court's rulings.

On the issue of vouching, we do not read the exchange concerning a juror's acquaintance with Frank Hodak to include personal vouching by the prosecutor that the investigator was a "good guy." While the prosecutor could have posed his question more artfully, he asked the potential juror for her impression of Hodak when she knew him; he did not offer his own opinion of the investigator.

As for the prosecutor's use of hypotheticals concerning the use of CIs, Martin has not established that testing the views of potential jurors about this police practice violated his right to a fair trial. Our court has determined that such questions must be viewed in context of the entire case. *See State v. Hunt*, 801 N.W.2d 366, 372 (Iowa Ct. App. 2011). In *Hunt*, although the prosecutor's hypothetical used the same words as the defendant during the crime, the question was phrased in a manner sympathetic to the defense position concerning intent. *Id.* Accordingly, the hypothetical question did not lock the prospective jurors into a particular position on the State's facts.

Courts from other jurisdictions have upheld the use of hypotheticals during voir dire under certain circumstances. *See, e.g.*, *Bane v. State*, 587 N.E.2d 97, 102 (Ind. 1992) (finding nor error when the prosecution posed a number of hypotheticals to potential jurors outlining many of the more sensational facts of the case to determine whether prospective jurors would be prejudiced against the victim); *State v. Letica*, 356 S.W.3d 157, 168 (Mo. 2011) (finding no error where State presented the venire panel to imagine themselves as victims to a completely unrelated crime, and then asked if they would need anything more

than the victim's testimony to convict); *State v. Johnson*, 229 P.3d 523, 534 (N.M. 2010) (holding it was permissible for the prosecutor to pose questions to the venire about accessory liability using hypotheticals as long as the exchange didn't bind them to a guilty verdict); *Lee v. State*, 176 S.W.3d 452, 461 (Tex. Ct. App. 2004) (concluding it was permissible to use hypothetical "to explain the application of the law" so long as it does not commit a prospective juror to a particular course of action based on a certain fact pattern) *aff'd,* 206 S.W.3d 620 (Tex. Crim. App. 2006). In Martin's case, the prosecution was entitled to gauge the reaction of potential jurors to using a drug user to "catch people selling drugs"—so long as the voir dire did not compel the potential jurors to commit to a particular verdict.

Finally, we consider the prosecutor's discussion of the accountability of the county attorney, as the chief law enforcement officer, through local elections. Martin contends the State used this discussion to "persuade, influence, and prejudice" the panel. Like Martin, we are skeptical that these comments by the prosecutor were aimed at selecting an impartial jury or assisting the parties with exercising peremptory challenges. Voir dire is not the place for the prosecutor to deliver a civics lesson. Here, the prosecutor told the potential jurors that the election of the county attorney acted as a "safeguard [so] that officers could not overstep their bounds."[4] In doing so, the prosecutor suggested the status of his office assured the legitimacy of the State's case. While the prosecutor's comments are not exactly the same as personally vouching for the credibility of

---

[4] The prosecutor also suggested during voir dire that the jury system was part of "public accountability."

the officers, they certainly push the limits of permissible voir dire. Although we see no legitimate purpose for the prosecutor's comments about the election of the county attorney during voir dire, we do not view these references as requiring the district court to grant a mistrial. *See State v. Newell*, 710 N.W.2d 6, 33 (Iowa 2006) (holding solitary reference to drug charges considered in the context of the entire trial did not require mistrial).

### B. Investigator's Testimony

On appeal, Martin contends Investigator Hodak was impermissibly allowed to testify as an expert witness concerning the recording of the controlled buy and the credibility of CI Collins. In his brief, he cites *State v. Hulbert*, 481 N.W.2d 329, 332 (Iowa 1992) (interpreting what is now rule 5.702) for the proposition that the court abused its discretion in allowing an expert opinion on witness credibility.

But at trial, Martin objected to the investigator's testimony as "Speculation. Irrelevant. Immaterial. Improper conclusion by a witness." Martin also complained the testimony was hearsay and lacking in firsthand knowledge. At no point did Martin object on the ground of impermissible expert testimony under rule 5.702. Because Martin did not preserve the issue he now raises on appeal, we decline to reach its merits. *See State v. Rutledge,* 600 N.W.2d 324, 325 (Iowa 1999).

### C. Expert Witness Instruction

Martin next argues the district court committed reversible error by instructing the jurors that they had heard from expert witnesses. At issue is the following uniform jury instruction:

> You have heard testimony from persons described as experts. A person who has become an expert in a field because of his or her education and experience may give an opinion on matters in that field and the reasons for the opinion. Consider expert testimony just like any other testimony. You may accept it or reject it. You may give it as much weight as you think it deserves, considering the education and experience of the witness, the reasons given for the opinion, and all the other evidence in the case.

Martin contends the instruction allowed the jury to improperly credit the State's witnesses who "vouched" for the credibility of CI Collins.

The State counters that the court properly gave this instruction because Deputy Hodak and Investigator Buck qualified as expert witnesses. We agree with the State. Rule 5.702 permits expert testimony if the "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *See State v. Tyler*, 867 N.W.2d 136, 153 (Iowa 2015), (recognizing Iowa is generally committed to a "liberal view" on the admissibility of expert testimony). Knowledge can come from education or experience. *See, e.g.*, *State v. Sykes*, 412 N.W.2d 578, 584 (Iowa 1987) (holding member of special enforcement unit with extensive experience in investigating narcotics sales could give expert testimony on business methods of drug dealers).

Deputy Hodak and Investigator Buck both worked with the regional drug task force. Hodak testified to receiving thousands of hours in training on drug recognition, undercover operations, and confidential informants. In Martin's trial, Hodak explained the process of a controlled drug buy to the jury. He also provided information concerning how much methamphetamine a user would

need to "get high" and how much the drug typically cost. Buck had a degree in criminal justice and also received specific training in drug recognition and sales. Buck discussed the price of methamphetamine in northern Iowa and explained the hierarchy among drug dealers.

Given Iowa's liberal rule on the admissibility of expert testimony and the specialized knowledge these law enforcement witnesses shared with the jurors, we conclude the district court properly instructed the jury on expert testimony.

### D. Substantial Evidence

In his fourth and final attack on the verdict, Martin disputes the sufficiency of the proof that he delivered the methamphetamine that Collins turned over to law enforcement. Martin asserts Collins "fell apart under cross examination." Martin points out that Collins was receiving a benefit from the State for testifying against him. Martin further argues that without the "vouching" of law enforcement, no rational jury would have believed Collins and convicted Martin of the drug offense.

Collins's veracity was a question for the jury. *See State v. Neitzel*, 801 N.W.2d 612, 624 (Iowa Ct. App. 2011) (recognizing only exception is rare circumstance where the testimony is "absurd, impossible, or self-contradictory"). The jury was aware of Collins's incentive to be a CI and to provide testimony for the State. The jury also heard corroborating testimony from the officers that they monitored Collins's movements and searched him before and after the controlled buy. Cognizant of Collins's motivation, the jury nevertheless believed his

testimony concerning the drug deal.  Under these circumstances, it is not our role on appeal to second-guess the jury's verdict.

**AFFIRMED.**