# IN THE COURT OF APPEALS OF IOWA

No. 15-2227
Filed May 3, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**RAYMOND B. HENDERSON,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Marlita A. Greve, Judge.

Raymond Henderson appeals from his convictions following a jury trial for three counts of delivery of heroin as an habitual offender, ongoing criminal conduct, and possession with intent to deliver heroin as an habitual offender. **AFFIRMED.**

Lauren M. Phelps, Davenport, for appellant.

Thomas J. Miller, Attorney General, and Jean C. Pettinger, Assistant Attorney General, for appellee.

Heard by Danilson, C.J., and Potterfield and Bower, JJ.

**DANILSON, Chief Judge.**

Raymond Henderson appeals from his convictions following a jury trial for three counts of delivery of heroin as an habitual offender, class "C" felonies, in violation of Iowa Code sections 124.401(1)(c) and 902.8 (2015); ongoing criminal conduct, a class "B" felony, in violation of Iowa Code sections 706A.2 and 706A.4; and possession with intent to deliver heroin as an habitual offender, a class "C" felony, in violation of Iowa Code sections 124.401(1)(c) and 902.8. Henderson asserts the trial court erred in denying the motion to continue trial, allowing opinion testimony regarding the contents of DVDs published at trial, allowing publication of the DVDs in their entirety including extraneous material, denying Henderson's motion for judgment of acquittal, utilizing jury instructions and verdict forms omitting the "solicited persons" definition and analysis, and denying Henderson's motion for new trial. Because we find no abuse of discretion or error of law on the part of the trial court with respect to these claims, we affirm.

## I. Background Facts & Proceedings.

Henderson's convictions in this matter arose from a number of transactions whereby Henderson sold heroin to individuals conducting controlled buys on behalf of the Davenport Police Department. On January 31, February 7, and February 8, 2015, Henderson sold heroin to a confidential source (CS), Ryan Moss, in the amounts of .6 grams, .6 grams, and .1 grams, respectively.

Detective Robert Myers testified that on each of those dates he met with Moss, oversaw a recorded phone call made by Moss to Henderson to set up the purchase, searched Moss' person and vehicle, provided Moss with recorded buy-

fund money to purchase the heroin and devices to record the transaction, worked with other officers providing surveillance, met with Moss after the purchase to retrieve the heroin and discuss the details of the transaction, and again searched Moss' person and vehicle. Detective Myers personally observed the transaction on January 31, 2015, and was able to identify Henderson as the driver and sole occupant of the vehicle in which the purchase was completed.

Detective Ann Sievert, who assisted with surveillance of the controlled buys, testified she observed Moss approach Henderson's vehicle on February 7, and enter Henderson's vehicle on February 8. Detective Sievert testified there was another individual present in the vehicle during the February 7 transaction. However, Detective Sievert was able to confirm Henderson was the sole occupant of the vehicle during the February 8 transaction.

Over defense counsel's objection, Moss testified at trial that he purchased heroin from Henderson through controlled buys on January 31, February 7, and February 8, 2015. Moss also testified he was paid by the police in exchange for conducting the transactions. DVDs containing the recorded phone calls made on January 31 and February 8 and video recordings of all three transactions were entered into evidence at trial.

Another controlled purchase of heroin from Henderson was attempted on February 25, 2015, utilizing CS Adrianna Murray. Murray testified she previously purchased .5 grams of heroin from Henderson on February 23 or 24. Because of the prior purchase, Murray became the subject of a law enforcement investigation and, as a result, agreed to participate in the attempted controlled buy on February 25 in order to avoid criminal charges.

On February 25, officers oversaw Murray place a recorded phone call to Henderson to set up the transaction, searched Murray, and gave her recorded buy-fund money to complete the purchase. However, Murray testified Henderson wanted her to use the heroin in his presence, and they went to a pharmacy to purchase needles before completing the transaction.[1] While Murray was inside the pharmacy, officers arrested Henderson. Because of these circumstances, Murray did not effectuate a purchase of heroin from Henderson at that time. Officers located 1.45 grams of heroin concealed in Henderson's buttocks at the hospital shortly after his arrest.

On November 15, 2015—one day before trial was set to begin—the State filed an application to amend the trial information, as well as a notice of additional minutes of testimony adding Ryan Moss to the witness list. Although there were references to a CS in the trial information and minutes of testimony, Moss had not previously been identified. Prior to the start of trial on November 16, defense counsel requested a continuance due to the late addition of Moss as a witness. The court denied the motion to continue, except to provide a half-day delay in beginning the trial. Following the jury trial, Henderson was found guilty on six of seven counts submitted to the jury. Henderson now appeals.

**II. Motion to Continue.**

First, Henderson contends his constitutional rights under the 5th, 6th, and 14th amendments to the United States Constitution, and articles 9 and 10 of the Iowa Constitution were violated because the trial court did not grant the motion to

---

[1] Murray testified there was another individual present who was driving the vehicle.

continue to remedy the State's failure to comply with the procedural requirements in adding Moss to the State's witness list the day before trial.

However, defense counsel did not raise the constitutional claims in the motion to continue or in the motion for new trial. Instead, counsel argued the late addition of Moss to the witness list was not "in keeping with what the Rules of Criminal Procedure require." Because the constitutional claims were not timely raised, we will not review Henderson's constitutional allegations on appeal. *See State v. Howse,* 875 N.W.2d 684, 688 (Iowa 2016) ("Appellate courts 'do not review issues that have not been raised or decided by the district court.'" (citation omitted)). However, we will review this claim within the parameters of the Iowa Rules of Criminal Procedure as Henderson preserved error in this regard.

We review the trial court's denial of the motion for continuance for an abuse of discretion. *State v. Clark*, 814 N.W.2d 551, 560 (Iowa 2012). The trial judge has considerable discretion in determining whether to grant a motion to continue. *State v. Artzer*, 609 N.W.2d 526, 530 (Iowa 2000).

Iowa Rule of Criminal Procedure 2.5(3) requires the prosecuting attorney, at the time of filing the trial information, to also file the minutes of testimony, including a notice stating the names and occupations of the witnesses and a full and fair statement of the witnesses' expected testimony. The State has a continuing duty to disclose the known residential and employment addresses of its witnesses. Iowa R. Crim. P. 2.11(12)(e).[2]

---

[2] Generally, residential addresses need not be provided for law enforcement, governmental, and licensed professional witnesses. *See* Iowa R. Crim. P. 2.11(12).

The trial information and minutes of testimony may be amended[3] "either before or during the trial" as long as the "substantial rights of the defendant are [not] prejudiced by the amendment" and "a wholly new and different offense is [not] charged." Iowa R. Crim. P. 2.4(8)(a). Thus, the State was not entitled to amend the trial information if Henderson's substantial rights were prejudiced.[4]

However, under Iowa Rule of Criminal Procedure 2.19(2), the State was not similarly permitted to provide notice of an additional witness the day before trial. Rule 2.19(2) provides:

> [I]n the case of informations, a witness may testify in support thereof if the witness's identity and a minute of the witness's evidence has been given pursuant to these rules. . . . Additional witnesses in support of the indictment or trial information may be presented by the prosecuting attorney if the prosecuting attorney has given the defendant's attorney of record, . . . a minute of such witness's evidence, as defined in rule 2.4(6)(a) or rule 2.5(3), *at least ten days before the commencement of the trial.*

(Emphasis added.) In the event the State does not provide the ten-day notice of additional witnesses pursuant to rule 2.19(2), rule 2.19(3) allows the court to

> order the state to permit the discovery of such witnesses, grant a continuance, or enter such order as it deems just under the circumstances. It may, if it finds that no less severe remedy is adequate to protect the defendant from undue prejudice, order the exclusion of the testimony of any such witnesses.

In filing the notice of additional witness one day before trial, the State was in clear violation of rule 2.19(2). The importance of providing advance notice of witnesses was aptly explained in *State v. LeGrand*, 501 N.W.2d 59, 61 (Iowa Ct. App. 1993):

---

[3] *See* Iowa R. Crim. P. 2.4(8)(e) and 2.5(5) (providing the trial information and minutes of testimony may be amended in the same manner as the indictment).
[4] Defense counsel did not object to the amended trial information on this basis.

One purpose of providing time frames within which the State is to provide a defense attorney with advance notice is so adequate preparation can be made for trial and reasonable opportunity is provided a defense attorney to adequately defend his or her client. This is important to assure defendant has a fair trial with competent representation.

In addition to potentially affecting defense counsel's trial strategy, allowing additional witnesses outside the prescribed time frame could prejudice the defendant by affecting defense counsel's opportunity to reach an informed and just plea agreement. *See State v. Brothern*, 832 N.W.2d 187, 194 (Iowa 2013) ("We have not specifically considered whether the 'prejudice' component of rule 2.4(8) includes the notion that a defendant might have made a different *plea* decision had he or she known of the amendment earlier. It stands to reason, though, that 'defense strategy' . . . could include a decision to plead guilty.").

Here, defense counsel requested a continuance in order to "investigate thoroughly and possibly even depose or get some discovery material about [Moss'] background and his agreement to testify with—to cooperate with law enforcement the way that he did allegedly." The trial court did order a half-day delay in the start of trial. The court explained:

> I'm going to postpone the trial to start this afternoon at 1:30 in order to give [defense counsel] a chance to talk with Mr. Moss, either informally or if you want to arrange for a deposition. That can be done this morning as well. And I'm going to deny the continuance since I'm giving [defense counsel] the opportunity to talk with Mr. Moss this morning. It seems to me that he should be able to get any information during that time that he can use to impeach Mr. Moss, if any.

While it is unclear whether a delay in the commencement of trial would have provided defense counsel sufficient time to depose Moss prior to trial, the record indicates defense counsel did not meet with Moss at all in the time set

aside for him to do so.[5] Defense counsel was able to cross-examine Moss to address the veracity of Moss' testimony.

We also note there was significant other record evidence besides the testimony of Moss to support the conclusion Henderson sold heroin to Moss. Detectives Myers and Sievert both testified as to their involvement in the controlled purchases and their observation of the transactions. The State also presented evidence through the DVDs.

There is no known reason on this record to explain the State's delay in adding Moss as a witness until one day before the trial. He was in the local jail at the time he was added as a witness, but the record does not reflect how long he had been in the jail. We agree with Henderson that the better approach would have been to afford him a continuance of the trial. Nonetheless, the trial court attempted to ameliorate the circumstance by granting a short delay before the start of the trial. No record was apparently made before the trial began that the half-day delay proved to be inadequate. Henderson has not argued that he was surprised by any testimony of Moss or otherwise hampered in his defense. The facts as established at trial overwhelmingly supported Henderson's guilt. If the State is not going to comply with the ten-day advance notice, the State should expect the remedies provided in rule 2.19(3) to be granted. But under these facts we cannot conclude the trial court abused its discretion in providing a half-

---

[5] We also note our supreme court has held "[t]he right to present a defense does not afford a criminal defendant the right to depose witnesses. A criminal defendant has no due process right to pretrial discovery." *State v. Clark*, 814 N.W.2d 551, 561 (Iowa 2012). Although, Iowa Rule of Criminal Procedure 2.13 does authorize a defendant to depose all witnesses listed by the State.

day delay in the commencement of trial in lieu of a continuance or that Henderson was unduly prejudiced.

### III. Opinion Testimony

Henderson also contends the district court erred in allowing Detective Myers to testify with respect to the DVDs containing the recorded phone calls and transactions between Henderson and Moss. Henderson asserts these portions of testimony constituted improper opinion testimony under Iowa Rule of Evidence 5.701.[6]

However, error was not preserved on this claim. The objection to Detective Myer's testimony at trial was not based upon improper opinion testimony. Rather, defense counsel argued the testimony "exceeds the purpose of limited recall." The opinion-testimony objection was raised for the first time in the motion for new trial. We therefore will not address this claim. *See Schmitt v. Koehring Cranes, Inc.*, 798 N.W.2d 491, 501 (Iowa Ct. App. 2011) ("In order to preserve an issue for appeal, an objection to evidence must be made when the evidence is offered. Additionally, the grounds of the objection must be specifically stated to inform the trial court of the basis for the complaint." (internal citation omitted)); *see also State v. Youngbear*, 203 N.W.2d 274, 278 (Iowa 1972) ("It is sound law and logic that a party may not sit by and permit the court to commit inadvertent error without protest, and then complain for the first time in his motion for a new trial or in the appellate court.").

---

[6] Iowa Rule of Evidence 5.701 provides that a witness not testifying as an expert is limited to providing opinion testimony that is "[r]ationally based on the witness's perception," "[h]elpful to clearly understanding the witness's testimony or to determining a fact in issue," and "[n]ot based on scientific, technical, or other specialized knowledge."

Even if error was preserved, we would not find the trial court abused its discretion in allowing Detective Myers' testimony regarding the DVD recordings. *See State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013) (stating scope of review of evidentiary rulings). The testimony included Detective Myers' explanation and observations during the recordings. The testimony did not improperly speak to Henderson's credibility or the ultimate issue of Henderson's guilt. *See State v. Ritenour*, No. 15-0038, 2016 WL 3269551, at *7 (Iowa Ct. App. June 15, 2016). Detective Myers' testimony was limited to information that was based on his perception and was helpful to the jury's understanding of the DVD recordings. Therefore, the testimony was properly within the bounds of Iowa Rule of Evidence 5.701.

**IV. Publication of DVDs.**

Henderson also asserts the trial court erred in allowing the State to play the DVDs in their entirety.[7] Henderson argues the publication of "extraneous

---

[7] The exhibits can be described as follows:

(1) Exhibit 14-A contains the recorded phone call on January 31, including Detective Myers' header, some discussion between Detective Myers and Moss as to what Moss should say on the call, and the actual phone conversation with Henderson. No objection was made to playing Exhibit 14-A in its entirety.

(2) Exhibit 14-B contains the recording of the January 31 transaction. The court allowed admission of Exhibit 14-B because it found defense counsel's objection—made during the publication of the DVD recording—was untimely.

(3) Exhibit 15 contains the recording of the February 7 transaction. Timely objection was made to playing this exhibit. The recorded phone call made setting up the February 7 transaction did not download properly to a DVD, so there is no corresponding recorded call exhibit to Exhibit 15.

(4) Exhibit 16-A contains the recorded phone call on February 8, including only the actual phone conversation with Henderson and a statement by Detective Myers at the end of the recording similar to what has been described as a "header." Timely objection was made to playing Exhibit 16-A in its entirety.

(5) Exhibit 16-B contains the recording of the February 8 transaction. Timely objection was also made to Exhibit 16-B.

material"—including portions of the DVDs other than the recorded calls and the actual transactions—was irrelevant and unfairly prejudicial to Henderson.

Evidence is relevant if it has the tendency to make a fact of consequence more or less probable than it would be without the evidence. Iowa R. Evid. 5.401. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Iowa R. Evid. 5.403. "Evidence is unfairly prejudicial if it has 'an undue tendency to suggest decisions on an improper basis commonly, though not necessarily, an emotional one.'" *State v. Putman*, 848 N.W.2d 1, 14 (Iowa 2014) (citations omitted).

The "extraneous material" of the DVD recordings included Detective Myers' "header"[8] and conversations with Moss. Upon on our review of the DVD recordings, we find what little is intelligible on the DVDs is only marginally relevant. The better approach would have been to limit the publications of the DVDs to the actual transaction and perhaps the header. Nonetheless, Henderson has not identified any specific prejudicial statements other than "opinions" about Henderson. But because his brief fails to cite to the record to this specific discourse, we are unable to discern any "opinions" or where his complaint lies.

Moreover, during the conversations, Detective Myers and Moss discuss facts that were previously introduced into evidence, such as the details of the transactions and the packaging and appearance of the heroin. Detective Myers' previous testimony also explained that the controlled-buy process included a

---

[8] Detective Myers explained at trial that the "header" is his statement on the DVD recordings explaining general information including the date and that they were attempting a controlled buy of heroin from Henderson.

debriefing with Moss after the transaction.  *See State v. Wixom*, 599 N.W.2d 481, 484 (Iowa Ct. App. 1999) ("To warrant reversal, an error must have prejudiced the defendant.  When evidence is merely cumulative, it cannot be said to injuriously affect the complaining party's rights." (internal citation omitted)).

Although we agree there is some extraneous material, we conclude publication of the DVD recordings in their entirety was not unfairly prejudicial to Moss.  The record does not support the assertion the "extraneous material" caused the jury to reach its decisions on an improper or emotional basis, and thus, there was no unfair prejudice or abuse of discretion.  We therefore conclude the trial court did not abuse its discretion in permitting publication of the DVD recordings in their entirety.

**V. Motion for Judgment of Acquittal.**

At the close of the State's case, defense counsel made a motion for directed verdict on all counts.[9]  Henderson argues the trial court erred in only granting the motion for judgment of acquittal on three counts.[10]  Henderson asserts there was insufficient evidence to support his convictions.

"We review sufficiency-of-the-evidence claims for correction of errors at law."  *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005).

---

[9] We note that while defense counsel at trial, and Henderson on appeal, refer to the "motion for directed verdict," the trial court properly analyzed and referred to the motion as a motion for judgment of acquittal.  *See* Iowa R. Crim. P. 2.19(8); *State v. Deets*, 195 N.W.2d 118, 123 (Iowa 1972) (holding that a grant of a motion for directed verdict "is tantamount to a judgment of acquittal in a criminal action"), *overruled on other grounds by State v. Walker*, 574 N.W.2d 280, 283 (Iowa 1998).  We will also refer to the motion as a motion for judgment of acquittal.

[10] The court granted the motion for judgment of acquittal on two counts of conspiracy and one count of possession with intent to deliver heroin found in an assumed residence of Henderson.

We uphold the verdict if substantial evidence supports it. "Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." Substantial evidence must do more than raise suspicion or speculation. We consider all record evidence not just the evidence supporting guilt when we make sufficiency-of-the-evidence determinations. However, in making such determinations, we also view the "evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence."

*Id.* (citations omitted).

Henderson argues that because Moss received payment and Murray received leniency in exchange for their participation in the controlled buys, as well as the presence of another individual during the February 7 and February 25 transactions, doubt is cast on the facts supporting his convictions.

Although another individual was present during the February 7 transaction with Moss, Moss communicated with Henderson to set up each transaction. The calls were recorded on January 31 and February 8. Though he was paid for his participation, Moss testified he did purchase heroin from Henderson on January 31, February 7, and February 8. Detective Myers testified he witnessed Henderson as the sole occupant of the vehicle during the January 31 transaction. Detective Sievert testified she saw Moss approach Henderson's vehicle during the February 7 transaction and enter Henderson's vehicle during the February 8 transaction. Detective Sievert testified she observed Henderson was the sole occupant of the vehicle during the February 8 transaction. Detective Myers testified he searched Moss' person and vehicle before and after all three controlled buys. Each time, Moss returned from the transaction without the buy-fund money he was provided and with heroin. And all three transactions were

recorded on video. There was substantial evidence supporting Henderson's convictions on the three counts of delivery of heroin and ongoing criminal conduct.

There was also substantial evidence with respect to the count of possession with intent to deliver based on Henderson's attempted transaction with Murray. The facts of the case belie Henderson's assertion that the heroin located on his person was for personal use. Although a controlled buy was not completed, Henderson communicated and met with Murray for purposes of selling Murray heroin. Officers oversaw a recorded phone call between Murray and Henderson to set up the transaction. An amount of heroin was then located on Henderson's person. Based on Murray's testimony, Henderson intended to sell Murray heroin and watch her use it. Additionally, Detective Myers testified the heroin retrieved from Henderson's person was packaged in individual pieces, indicating some was intended for personal use and some was intended to be sold. Substantial evidence also supported Henderson's conviction on this count.

Because there was substantial evidence to support Henderson's convictions on the three counts of delivery of heroin to Moss, one count of ongoing criminal conduct, and one count of possession with intent to deliver heroin to Murray, the trial court did not abuse its discretion in denying the motion for judgment of acquittal with respect to these counts.

**VI. "Solicited Persons" Jury Instruction and Verdict Forms.**

Henderson also asserts the trial court erred in denying Henderson's request to use a jury instruction and verdict forms including the "solicited persons" definition and analysis. We review challenges to jury instructions for

15

correction of errors at law. *State v. Hanes*, 790 N.W.2d 545, 548 (Iowa 2010). In a criminal case, the district court is required to instruct the jury as to the law applicable to all material issues in the case. *State v. Becker*, 818 N.W.2d 135, 141 (Iowa 2012), *rev'd on other grounds*, *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 (Iowa 2016). "Our review is to determine whether the challenged instruction accurately states the law and is supported by substantial evidence. Error in a particular instruction does not require reversal unless the error was prejudicial to the complaining party." *Id.*

Henderson argues he was prejudiced because the jury instruction and verdict forms did not require the jury to find Moss and Murray were solicited persons. However, our supreme court has held:

> The requirement of corroborating evidence, being an exception to the general rule, is dictated by and normally limited to specific circumstances in which the credibility of evidence is deemed questionable in the absence of other, supportive evidence. We perceive no legislative intent underlying the enactment of rule [2.21(3)] to require corroboration whenever conduct that may be described as 'solicitous' has occurred. Accordingly, we hold that the term 'solicited person' in rule [2.21(3)] is applicable only when the accused is charged with the offense of solicitation under section 705.1.

*State v. Williams*, 315 N.W.2d 45, 58 (Iowa 1982). Thus, because Henderson was not charged with the offense of solicitation, he was not entitled to the "solicited persons" instruction in this case.

But because the jury instruction required the jury to find Moss and Murray's testimony was corroborated by other evidence connecting Henderson with the crimes charged, Henderson was afforded an additional required finding by the jury before he could be convicted. Therefore, Henderson has not shown

he was prejudiced by the jury instruction and verdict forms utilized in this matter. We find no error in the submitted jury instructions and verdict forms.

**VII. Motion for New Trial.**

Finally, Henderson contends the trial court erred in denying Henderson's motion for new trial because the jury verdicts were contrary to the weight of the evidence.

We review the trial court's denial of a motion for new trial based upon the weight-of-the-evidence standard for an abuse of discretion. *State v. Serrato*, 787 N.W.2d 462, 472 (Iowa 2010). The trial court has broader power in ruling on a motion for new trial than on a motion for judgment of acquittal. *Id.* On a motion for new trial, the court "may weigh the evidence and consider the credibility of witnesses. If the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted." *State v. Ellis*, 578 N.W.2d 655, 658-59 (Iowa 1998) (citation omitted). However, a motion for new trial "should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *Id.* at 659 (citation omitted).

Henderson asserts the trial court incorrectly considered only the evidence favorable to the State in ruling on the motion for new trial. In its oral ruling on the motion for new trial, the trial court explained:

> Well, I have to determine whether your—the defendant is entitled to a motion for new trial on whether the evidence or the verdict was contrary to the weight of the evidence. In looking at that, I have to view the evidence not in the light most favorable to the prosecution, but I have to determine whether the greater amount of credible evidence supports one side or the other.

Here, the jury had evidence that a confidential source had assisted in purchasing drugs from the defendant on three separate occasions and they had a videotape to watch as well to listen to the testimony of the confidential source and the detectives who were working with that confidential source, and so they chose and could have chosen to believe the confidential source, the evidence on the videos, as well as the detectives, and certainly the weight is not contrary to the greater amount of credible evidence.

With respect to the other sale of drugs to [Murray], . . . it was a confidential source again. She had allegedly purchased drugs from the defendant the day before, which the jury did not believe and found him not guilty of that count. But under the count that he was found guilty of with respect to [Murray], she was working with the police at the time, or at least she testified she was, and purchased drugs from the defendant as a confidential source. And again, [Murray] testified and the jury could choose to believe her, which they obviously did, and that was along with the detectives' testimony, that evidence is not against the greater amount of credible evidence.

The trial court stated and applied the correct standard in denying Henderson's motion for new trial. The court acknowledged the potential issues with credibility of the CS witnesses but noted the jury found their testimony credible. The trial court also acknowledged the other evidence supporting Henderson's guilt. We cannot say this is an exceptional case in which the evidence preponderates heavily against the verdict. We find the trial court did not abuse its discretion in denying Henderson's motion for new trial.

**VIII. Conclusion.**

We conclude Henderson was not unduly prejudiced and the trial court did not abuse its discretion in ordering a half-day delay in the commencement of trial in lieu of granting Henderson's motion to continue. We find the admission of Detective Myers' testimony with respect to the DVD recordings and publication of the DVD recordings in their entirety also did not constitute an abuse of discretion. The court properly denied Henderson's motion for judgment of acquittal as the

convictions were supported by substantial evidence. The court's refusal to submit Henderson's jury instruction and verdict forms was not in error. We also conclude the trial court's denial of the motion for new trial was not an abuse of discretion. We therefore affirm.

**AFFIRMED.**